[S. F. No. 11543. In Bank.—February 1, 1926.]

ELIZABETH B. BLETHEN, Plaintiff and Respondent, v. THE PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA (a Corporation), Defendant and Appellant; ALICE M. SCOTT, Defendant and Respondent.

[1] INSURANCE—POLICY AS PROPERTY—NATURE OF CONTRACT—RIGHT TO TRANSFER.—An insurance policy in legal contemplation is property; and it can be sold, assigned, or bequeathed by the owner thereof. Its pecuniary value to its owners is as great as though they hold a promissory note of the company for that amount, payable upon the same conditions. It is a chose in action and upon its satisfaction by a payment of the amount specified the title to the money so paid follows the title to the policy.

[2] ID. — INTEREST OF BENEFICIARY — REVOCABLE EXPECTANCY. — The interest of a beneficiary named in a policy in which the insured may change the beneficiary is not a vested right but merely an expectancy of an incomplete and inchoate gift, which is revocable at the will of the insured and which does not become vested as a right until fixed by death.

[3] ID.—PROCEEDS AS COMMUNITY PROPERTY.—The proceeds of an insurance policy, the premiums on which have been paid out of community assets, are community property.

1.  See 14 Cal. Jur. 531; 14 R. C. L. 997.
2.  See 14 Cal. Jur. 583; 14 R. C. L. 1376.
3.  See 14 Cal. Jur. 587; 5 R. C. L. 843.

[4] ID.—COMMUNITY PROPERTY—RESTRICTION ON HUSBAND'S RIGHT OF TRANSFER—NATURE OF WIFE'S INTEREST.—While the husband is the owner of the community property and the interest of the wife therein is but a mere expectancy, under section 172 of the Civil Code the husband is expressly prohibited from giving away any part of the community personal property without the written consent of the wife, but this restriction on the husband's power of disposal does not vest any interest in the community property in the wife.

[5] ID.—GIFT WITHOUT CONSENT—RIGHT OF WIFE TO REVOKE—SUBSEQUENT CONSENT.—If a gift is made by the husband in contravention of the statute, the gift is not a nullity; on the contrary, the property vests in the donee, subject to a right on the part of the wife to have one-half of the gift revoked, and if, after the gift is made, the wife gives her consent, the requirements of the statute are fulfilled and no further action is required to make it a valid and effective gift.

[6] ID. — GIFT EFFECTIVE AT DEATH — TITLE OF DONEE — REFUSAL OF WIFE TO ACQUIESCE. — A gift of community property initiated during the life of the husband but not completed and consummated until his death must be said to take effect, vesting the property in the donee subject to being avoided by the wife at her option, and until she does declare her intention of refusing to acquiesce in the husband's gift the property vests in the donee.

[7] ID.—OWNERSHIP OF COMMUNITY PROPERTY—RIGHTS OF WIFE UPON HUSBAND'S DEATH—VALID GIFT.—Under the California theory of community property the husband remains the owner of all the community property until his death, at which time the rights of the wife immediately ripen and she becomes entitled to one-half of the community property with the right to avoid any conveyance so far as is necessary to protect her interest in any property conveyed by her husband in derogation of her right to a one-half interest; but until the wife elects to establish her community right by the assertion of her rightful claim, the gift by the husband is valid, and as to her the gift is a nullity only when she elects to treat the same as a nullity.

[8] ID.—VALIDITY OF GIFT—PROCEEDS OF INSURANCE POLICY.—The rule that a gift of a husband of community property is valid until avoided by the wife, applicable to community property in general, is applicable to the proceeds of an insurance policy, the premiums on which have been paid out of community funds.

[9] ID.—GIFT OF INSURANCE POLICY—PAYMENT TO DONEE—ABSENCE OF NOTICE OF ADVERSE CLAIM.—A gift by a husband of an insurance

---

4.   See 5 Cal. Jur. 332; 5 R. C. L. 851.
5.   See 5 Cal. Jur. 342.

policy to a beneficiary, other than his wife, is a good and valid gift until avoided by the wife by an assertion of her right to one-half of the proceeds, and the insurance company, until it has been made aware of the wife's claim, is justified in delivering to the beneficiary, as the person rightfully entitled thereto, the proceeds of the policy upon the death of the insured husband.

[10] ID.—PAYMENT TO BENEFICIARY DESIGNATED—INSUFFICIENT NOTICE OF ADVERSE CLAIM.—Letters from attorneys for the surviving wife to the insurance company making inquiries on behalf of her adopted son, but not purporting to claim anything under the insurance policy on her behalf, do not constitute notice of any adverse claim by her to the proceeds of the insurance policy; and where the insurance company fulfills its obligations under the policy, by making payment to the beneficiary designated therein prior to notice of any claim adverse to said beneficiary, the surviving wife has no rights against the insurance company.

(1) 32 C. J., p. 1093, n. 62, p. 1240, n. 69; 37 C. J., p. 422, n. 52, p. 427, n. 29; 40 Cyc., p. 1049, n. 36.  (2) 31 C. J., p. 35, n. 49; 37 C. J., p. 578, n. 52, p. 579, n. 51, p. 580, n. 63, p. 581, n. 65. (3) 31 C. J., p. 35, n. 47.  (4) 31 C. J., p. 79, n. 28, 29, p. 129, n. 82.  (5) 31 C. J., p. 129, n. 83, 84, p. 130, n. 86, 87, 88, 89, 91. (6) 31 C. J., p. 130, n. 87; 40 Cyc., p. 1050, n. 46.  (7) 31 C. J., p. 79, n. 28, p. 129, n. 83, p. 130, n. 87, p. 174, n. 1, p. 175, n. 3. (8) 31 C. J., p. 130, n. 87.  (9) 31 C. J., p. 130, n. 87.  (10) 31 C. J., p. 130, n. 87.

APPEAL from a judgment of the Superior Court of Alameda County.  Dudley Kinsell, Judge.  Reversed.

The facts are stated in the opinion of the court.

R. S. Gray for Appellant.

Clinton G. Dodge for Plaintiff and Respondent.

H. S. Craig for Defendant and Respondent.

Knight, Boland, Hutchinson & Christin, as *Amici Curiae* in Support of Appellant.

LENNON, J.—Plaintiff brought this action to recover part of the proceeds of a life insurance policy upon the ground that the same constituted community property.

Briefly stated, the facts of the case set forth in the record, are these: In 1900, George W. A. Blethen and plaintiff in-

termarried. Subsequent thereto, in December, 1914, the appellant Pacific Mutual Life Insurance Company of California, a corporation, issued to Blethen two policies of life insurance in the sum of $4,000, respectively. One of these policies was permitted to lapse. In the other policy Blethen's sister, Alice M. Scott, was designated as beneficiary, apparently for the purpose of securing a sum of money loaned to Blethen. This is the policy involved in controversy here. Under a power reserved in this policy to change the beneficiary, Blethen substituted his wife for the sister as beneficiary in February, 1918. The Blethens, however, separated in September, 1919, and subsequent thereto, in October, 1920, in contemplation of divorce proceedings to be prosecuted by the wife, a property settlement was entered into between the husband and the wife. This settlement provided, among other things, that Blethen's future earnings should be regarded as his separate property. Neither in said settlement nor in the interlocutory decree of divorce, which followed, was any specific disposition made of said policy of life insurance. About the time of the entry of the decree of divorce, however, Blethen substituted his adopted son, Hooper, a minor, as beneficiary under the policy. Some time subsequent thereto, without the knowledge or consent of Mrs. Blethen, said policy was again changed so as to make it payable to Blethen's sister, Alice M. Scott. No final decree was ever entered in the Blethens' divorce action. Blethen died in February, 1922, and a short time thereafter his sister, the beneficiary under the said policy, who had possession thereof, applied for and obtained from said insurance company the necessary blanks to be used in the preparation of the proof of death of the insured and of a claim for the insurance money. Shortly thereafter, a law firm, acting on behalf of Mrs. Blethen, sent said insurance company a letter, under date of March 2, 1922, informing said company of the status of said divorce proceedings and stating that at the time of the same there was an agreement between Blethen and his wife that the insurance policy proceeds should be applied for the benefit of their adopted son, Hooper, but that they had received information to the effect that the beneficiary named in the policy was Alice M. Scott. Information was requested as to what person was in fact named beneficiary in said policy

at the time of the death of Blethen.   The letter closed with
the sentence: "We represent Mrs. Betty Blethen, the widow,
on whose shoulders now falls the rearing of this boy."   Re-
plying to this letter the insurance company stated that it
was advised of the death of Blethen and had furnished the
necessary blanks to Alice M. Scott, the beneficiary named in
the policy at the time of the death of Blethen; that the
information contained in the letter with reference to the
divorce proceedings of the Blethens was the first it had
heard of the same; that it had not seen any agreement made
by Blethen with his wife with reference to the insurance
policy and if there was any such agreement they would be
pleased to have furnished forthwith a certified copy thereof.
Receiving no response to this letter the insurance company
again wrote the said law firm and requested to be advised
definitely whether or not the widow of Blethen claimed any
interest in the policy or the proceeds thereof, either in her
individual capacity or as the guardian of Hooper Blethen,
who, as previously indicated, was the beneficiary named in
the policy just prior to the naming as beneficiary of the
sister of Blethen, Alice M. Scott.   Said law firm, under
date of April 6, 1922, replied to the last letter of the insur-
ance company, stating in effect that they did not see what
they could do for their client, as the assured had the right
to change the beneficiary without the consent of anyone and
"there seems to be nothing that we can do except to let
you follow your regular course."   A short time after the
receipt of this letter, on April 11, 1922, said insurance com-
pany, in accordance with the terms of the insurance policy,
paid all the moneys due thereunder, amounting to the net
sum of $3,431.66, to Alice M. Scott, the beneficiary therein
named at the time of the death of Blethen, the insured.

About the middle of February, 1923, after the lapse of
some ten months, Mrs. Blethen, who was then acting upon
the advice of her present attorney, wrote said insurance
company to the effect that it was no doubt familiar with the
recent case of *New York Life Ins. Co.* v. *Bank of Italy,* 60
Cal. App. 602 [214 Pac. 61], where it was held that when
the premiums were paid from the funds of the community
the husband could only dispose of one-half of the policy, the
remainder being the property of the surviving widow.
Under these circumstances Mrs. Blethen, so the letter stated,

was entitled to the sum of one-half of the policy, and demand was thereby made for the payment of the same. In response to this letter the insurance company called attention to the correspondence previously had with Mrs. Blethen's former attorneys, and gave the full details of the settlement made with the beneficiary, Alice M. Scott, but declined to make any additional payments upon the said policy to the plaintiff, Mrs. Blethen. After some further correspondence, the substance of which is not material, Mrs. Blethen, on May 17, 1923, commenced this action against the insurance company and made Alice M. Scott a party defendant thereto. Judgment was rendered in favor of the plaintiff against the insurance company for a share of the proceeds of the policy proportionate with the amount of the premiums paid from the community funds. Judgment of nonsuit was rendered in favor of the defendant Alice M. Scott, from which judgment no appeal has been taken by the plaintiff. Defendant insurance company appeals from the judgment in favor of the plaintiff and the judgment of nonsuit in favor of the defendant Alice M. Scott.

The principal question presented by this appeal is whether or not a surviving wife may maintain an action against an insurance company to recover her community interest in the proceeds of a life insurance policy issued to her husband and made payable to a beneficiary other than the wife, without the wife's consent, the premiums of which have been paid out of community funds, after the insurance company, in good faith, without notice of adverse claim thereto, has made full payment on the policy to the beneficiary designated in the policy.

At the very outset we are confronted with respondent's contention that this question has been already answered and determined by the recent case of *New York Life Ins. Co.* v. *Bank of Italy,* 60 Cal. App. 602 [214 Pac. 61], which will hereafter be referred to as the Bank of Italy case. In that case a policy of life insurance was issued by the New York Life Insurance Company upon the life of one Charles J. Newman. The policy reserved to the insured the power of changing the beneficiary. At the time of the issuance of the policy and at the time of the death of the insured, the defendant, Ella J. Newman, was the wife of the insured, and Layo Newman, a brother of the insured, was made,

without the wife's consent, the beneficiary under the policy. Conflicting claims to the proceeds of the policy having been made upon the insurance company after the death of the insured by Layo Newman, as beneficiary, and Ella Newman, as the wife of the insured claiming her community share of the same, the insurance company impleaded all the claimants and paid the proceeds of the policy into court to be disposed of according to the respective rights of the claimants. The insurance company was thereupon dismissed as a party and the action thereafter proceeded upon the issue joined between the widow and the brother of the deceased. It was conceded that all the premiums on said policy had been paid out of community property. The court held that the surviving wife was entitled to one-half of the proceeds of the policy, as they were community assets, one-half of which belonged to the surviving widow. It will be noted that the insurance company, having impleaded the claimants and paid out the proceeds of the policy into court, was dismissed from the action and no question of the rights of the surviving wife against the insurance company was raised or decided. Indeed, in denying a rehearing of the case, the court expressly refused to discuss the right of an insurer to make payment to a beneficiary provided such payment be made prior to any notice of adverse claims, saying in this behalf, ''No such question was here involved, as the insurance company had impleaded the parties and paid the proceeds of the policy into court. Whatever our views might be on the subject, the expression thereof would be purely *dicta* and of no value. . . . Whatever questions, other than the ones decided, might possibly arise between the different parties to the contract of insurance they were not now before us, and are in no manner affected by the decision.'' In the petition for a hearing by the supreme court after a decision by the district court of appeal, which was denied, the only points presented concerned the paramountcy of the surviving wife's claim to one-half of the proceeds as against a beneficiary to whom the gift had been made without the consent of the wife.

The respondent, relying upon certain phrases in the Bank of Italy case, argues that the gift of the proceeds of the insurance policy by the husband, without the consent of the wife, was a nullity and that the rights of the beneficiary

never vested in more than one-half of said proceeds, inasmuch as the rights of the wife arose immediately upon the death of the husband. In other words, it is insisted that the community interest of the wife in one-half of the proceeds never vested in the beneficiary, Alice M. Scott, and the insurance company was not justified in paying over to the beneficiary the entire proceeds of the insurance policy.

The sole question decided in the Bank of Italy case was that, as between the wife *and the beneficiary* named without her written consent, the wife was entitled to one-half of the proceeds of an insurance policy the premiums on which were paid out of community funds. This case, therefore, so strongly stressed by counsel for respondent, cannot be said to be determinative of the question involved in the instant case. On the contrary, the broad scope attempted to be given that case by counsel for respondent was expressly repudiated by the court upon its denial of a rehearing.

A review of the previous decisions of this court, dealing with the respective rights of the husband and wife in community property, and the effect of a husband's attempt to make a gift of more than his share of the community property, will not support the contention of the respondent that the gift to the beneficiary of the proceeds of the insurance policy in the instant case was an absolute nullity and that the wife's interest in one-half thereof vested in her, *eo instanti,* upon her husband's death. On the contrary, we think that the previous rulings of this court are directly against the contention of respondent as made in the instant case.

[1] An insurance policy in legal contemplation is property. "It could be sold, assigned or bequeathed by the owner thereof. Its pecuniary value to its owners was as great as though they held a promissory note of the company for that amount, payable upon the same conditions. It was a chose in action and upon its satisfaction by a payment of the amount specified the title to the money so paid followed the title to the policy." (*In re Dobbei,* 104 Cal. 432 [43 Am. St. Rep. 123, 38 Pac. 87].) [2] The interest of a beneficiary named in a policy in which the insured may change the beneficiary is not a vested right but merely an expectancy of an incomplete and inchoate gift, which is revocable at the will of the insured and which does not become

vested as a right until fixed by death. (*Jory* v. *Supreme Council,* 105 Cal. 20, 29 [45 Am. St. Rep. 17, 26 L. R. A. 733, 38 Pac. 524]; *Hoeft* v. *Supreme Lodge, Knights of Honor,* 113 Cal. 91 [33 L. R. A. 174, 45 Pac. 185].) [3] The proceeds of an insurance policy, the premiums on which have been paid out of community assets, are community property. (*New York Life Ins. Co.* v. *Bank of Italy, supra.*)

[4] The husband is the owner of the community property and the interest of the wife therein is but a mere expectancy. (*Van Maren* v. *Johnson,* 15 Cal. 308, 311; *Tolman* v. *Smith,* 85 Cal. 280 [24 Pac. 743]; *Spreckels* v. *Spreckels,* 116 Cal. 339 [58 Am. St. Rep. 170, 36 L. R. A. 497, 48 Pac. 228]; *Spreckels* v. *Spreckels,* 172 Cal. 775 [158 Pac. 537]; *Winchester* v. *Winchester,* 175 Cal. 391 [165 Pac. 965]; *Estate of Brix,* 181 Cal. 667 [186 Pac. 135]; *Dargie* v. *Patterson,* 176 Cal. 714 [169 Pac. 360]; *Roberts* v. *Wehmeyer,* 191 Cal. 601 [218 Pac. 22].) Certain statutory limitations for the protection of the wife have, however, been placed upon his power of disposal. Thus by section 172 of the Civil Code, the husband is expressly prohibited from giving away any part of the community personal property without the written consent of the wife. This restriction on the husband's power of disposal does not, however, vest any interest in the community property in the wife. (*Spreckels* v. *Spreckels,* 172 Cal. 775 [158 Pac. 537]. [5] If a gift is made by the husband in contravention of the statute, the gift is not a nullity. On the contrary, the property vests in the donee, subject to a right on the part of the wife to have one-half of the gift revoked. If, after the gift is made, the wife gives her consent, the requirements of the statute are fulfilled and no further action is required to make it a valid and effective gift. (*Spreckels* v. *Spreckels,* 172 Cal. 775 [158 Pac. 537]; *Dargie* v. *Patterson,* 176 Cal. 714 [169 Pac. 360]; *McDougald* v. *First Federal Trust Co.,* 186 Cal. 243, 245 [199 Pac. 11].)

In short, a gift of community property by the husband during his lifetime without the consent of his wife is not void but *voidable.* "The limitation upon the husband's power to make a gift . . . depends upon two questions of fact: The absence of a valuable consideration, and the absence of her written consent, both of which may have to be

proven by collateral evidence. The gift when made, *immediately vests the property in the donee, subject to her right of revocation.* She may give her consent at any time during her life, and if she does the gift becomes absolute with respect to her. The provision was manifestly intended solely for the benefit of the wife. If she seeks to assert such right, it is incumbent upon her to show that the facts exist upon which it depends. The conclusion seems inevitable that the gift is not absolutely void with respect to her but only voidable by her upon proof of the facts necessary to that end." (Italics ours.) (*Spreckels* v. *Spreckels,* 172 Cal. 775 [158 Pac. 537]. See, also, *Dargie* v. *Patterson, supra.*)

It is insisted by respondent, however, that these cases refer to transfers made by the husband during his lifetime, and that in the instant case the transfer takes effect upon the death of the husband. (*Jory* v. *Supreme Council, supra.*) We do not think this distinction is substantial or material. Particularly is this true in view of the well-established rule that a gift by a husband by testamentary disposition of more than his half of the community property is not void, but only voidable at the election of the wife. (*Spreckels* v. *Spreckels,* 172 Cal. 775 [158 Pac. 537].) "The limitation upon the husband's testamentary power contained in the code was not understood to vest in the wife, during marriage, any interest or estate whatever in the community property, but merely to constitute a restriction upon *the husband's power.* If the husband undertook to dispose of all the community property by will, giving the wife less than one-half thereof, such disposition was not absolutely void, but had the effect of putting her to her election whether to take under the statute or under the will. If she took the latter provision, the disposition in the will of the remaining portion of the property was thereby affirmed and made valid. (*Morrison* v. *Bowman,* 29 Cal. 346; *Estate of Stewart,* 74 Cal. 98, 104 [15 Pac. 445]; *Estate of Smith,* 108 Cal. 119 [40 Pac. 1037]; *Estate of Vogt,* 154 Cal. 509 [98 Pac. 265].) The testamentary disposition in such a case, therefore, was voidable, but not absolutely void. If it had been void, in the extreme sense, the logical result would have been that a mere election by the wife would not transfer the remainder of her statutory half to the other beneficiaries under

the will, but that a conveyance by her would be necessary. It has always been understood that her election is sufficient for that purpose and that the will, in that event, operates to transfer the property.'' **[6]** An attempted disposition by will by the husband of more than his half of the community property vests the property in the donee subject to being avoided at her election. If this be true, it necessarily follows that a gift initiated during the life of the husband but not completed and consummated until his death must be said to take effect, vesting the property in the donee subject to being avoided by the wife at her option. Although it is true that a wife cannot be deprived of her half of the community property without her consent, yet under the reasoning of *Spreckels* v. *Spreckels,* 172 Cal. 775 [158 Pac. 537], until she does declare her intention of refusing to acquiesce in the husband's gift the property vests in the donee or beneficiary under the will.

**[7]** Under the California theory of community property the husband remains the owner of all the community property until his death, at which time the rights of the wife immediately ripen and she becomes entitled to one-half of the community property with the right to avoid any conveyance so far as is necessary to protect her interest in any property conveyed by her husband in derogation of her right to a one-half interest. (*Dargie* v. *Patterson, supra.*) However, until the wife elects to establish her community right by the assertion of her rightful claim, the gift by the husband is valid. As to her the gift is a nullity only when she elects to treat the same as a nullity. **[8]** The rule that the gift of a husband of community property is valid until avoided by the wife, applicable to community property in general, is applicable to the proceeds of an insurance policy, the premiums on which have been paid out of community funds.

**[9]** It follows that a gift by a husband of an insurance policy to a beneficiary, other than his wife, is a good and valid gift until avoided by the wife by an assertion of her right to one-half of the proceeds, and the insurance company, until it has been made aware of the wife's claim, is justified in delivering to the beneficiary, as the person rightfully entitled thereto, the proceeds of the policy upon the death of the insured husband. The insurance company having contracted with the husband, and having promised to

pay the proceeds of the policy to whomsoever he designated, in the absence of notice of any adverse claim, could do nothing but fulfill its contract. In short, until the wife had given notice of her claim to one-half of the proceeds, thereby asserting her statutory right of avoiding the gift *ab initio* (*Dargie* v. *Patterson, supra*), all of the parties to the contract of insurance were entitled to deal with the subject matter thereof as if the gift were absolute.

[10] No notice of any adverse claim to the proceeds of the insurance policy was given by the wife to the insurance company prior to the payment of the proceeds to the beneficiary. The correspondence between the insurance company and the plaintiff's former attorneys shows merely that she was inquiring on behalf of her adopted son and that she did not purport to claim anything under the policy until some ten months after the insurance company had paid the money to the beneficiary under the policy.

The insurance company having fulfilled its contract according to its terms, prior to notice of any claim adverse to the beneficiary, has satisfied its obligations under said contract. The wife of the insured has no rights now against the insurance company.

Respondent points out that as consequences of the rule just enunciated, wives who are ignorant of their husbands' affairs may fail to present their claims adverse to the beneficiary, or a beneficiary, by connivance with officials of the insurance company, may defraud a wife of her one-half share in the proceeds. There must be placed, however, on the other side of the scales, as consequences apt to flow from a contrary rule, the serious impairment of the usefulness of life insurance policies, necessarily resulting from the almost intolerable burden which would be placed upon insurance companies of determining in each instance, prior to the payment of the policy, whether or not the premiums were paid out of community funds, and if so, what proportion was so paid, as well as the burden of investigating any change which may have occurred in the marital situation and relations of the insured. While judicial conclusions are not ordinarily controlled by the consequences which may flow therefrom, yet, if consequences be weighed, from a practical point of view, the balance is in favor of the conclusion herein reached. This conclusion, which gives effect to the

expressed intention of the parties to the contract in controversy, is, we think, in harmony with a sound public policy having for its purpose the promotion of the free writing of life insurance.

Whatever rights the respondent may have as against the beneficiary under the insurance policy under the rule laid down in the case of *Dargie* v. *Patterson, supra,* need not be discussed here, as no appeal has been taken by the plaintiff from the judgment of nonsuit in favor of the defendant Alice M. Scott.

Judgment is reversed.

Waste, C. J., Shenk, J., Curtis, J., Lawlor, J., Richards, J., and Seawell, J., concurred.