[Civ. No. 29349. First Dist., Div. Four. Mar. 14, 1973.]

SELMA LEONARD, Individually and as Administratrix, etc., Plaintiff and Appellant, v. OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA, Defendant and Respondent.

## COUNSEL

Conradi & Dreyfus, Eric J. Schmidt and Robert L. Dreyfus for Plaintiff and Appellant.

Sullivan, Roche & Johnson, Theodore A. Kolb and Ronald H. Kahn for Defendant and Respondent.

## OPINION

**DEVINE, P. J.**—Selma Leonard, individually and as administratrix of the estate of Andrew Leonard, deceased, appeals from a summary judgment for respondent, Occidental Life Insurance Company of California. By her complaint, plaintiff sought recovery of her alleged community property interest in two life insurance policies on the life of her deceased husband. Defendant answered, setting up the affirmative defense that, pursuant to the terms of the policies, it had paid the designated beneficiaries, Andrew Leonard, Jr., Joseph Leonard, Juanita Belec, and appellant, all of the benefits payable under the policies.

Appellant is the widow of Andrew Leonard, who died on July 8, 1969. Andrew and Selma were married in 1962. Andrew then had two sons and a daughter by a prior marriage. All were adults and married. At the time of his death, Andrew left two paid-up life insurance policies with respondent company. The beneficiaries in Group Life Insurance Policy 9134-LD were the three adult children; the beneficiaries in Group Life Insurance Policy 5500-K were appellant Selma Leonard and the three children. On August 28, 1969, full benefits pursuant to the terms of policy 9134-LD were paid the beneficiaries, the three children. On September 17 and 18, 1969, full benefits pursuant to the terms of policy 5500-K were paid to appellant and the three children. It was not until September 23, 1969, that appellant gave written notice to respondent of her claim to community interest in these policies. For present purposes, it is conceded that the premiums had been paid by the husband with community funds.

The trial court granted the motion for summary judgment because of Insurance Code section 10172, holding that respondent had discharged its obligations under the policies by making payment to the beneficiaries before having received notice of claim by the widow. Section 10172 provided, in pertinent part: "Notwithstanding the provisions of Sections 161a

and 172 of the Civil Code, when the proceeds of, or payments under, a life insurance policy become payable and the insurer makes payment thereof in accordance with the terms of the policy, or in accordance with the terms of any written assignment thereof if the policy has been assigned, such payment shall fully discharge the insurer from all claims under such policy unless, before such payment is made, the insurer has received, at its home office, written notice . . . ."[1]

■ The contention on appeal is that because Insurance Code section 10172, construed literally, did not allow appellant, as the widow of the insured, a reasonable time within which to assert her claim, the court's reliance on the statute resulted in depriving her of due process of law and that the statute as so interpreted is unconstitutional.

In *Blethen* v. *Pacific Mut. Life Ins. Co.,* 198 Cal. 91 [243 P. 431], it was recognized that the insurance company, having contracted with the husband and having promised to pay the proceeds of the policy to whomsoever he designated, could do nothing but fulfill its contract in the absence of notice of any adverse claim (pp. 101-102). This was even before the Legislature gave specific approval and assurance to life insurance companies by enacting section 10172. The court balanced the interests of wives who are ignorant of their husbands' affairs and those who may be defrauded by connivance with officials of the insurer against serious impairment of the usefulness of life insurance policies which would result from the almost intolerable burden of determining in each instance prior to payment whether or not the premiums were paid out of community funds and, if so, what proportion was so paid, as well as the burden of investigating any change in the marital situation and relations of the insured. The court ruled as it did "in harmony with a sound public policy having for its purpose the promotion of the free writing of life insurance" (p. 103). The *Blethen* case has remained intact and its ruling has been reinforced by the enactment of section 10172. The reasons given by the Supreme Court in *Blethen* remain equally valid today.

*Blethen* cannot be distinguished on the ground of the later (by one year) enactment of section 161a of the Civil Code. (Stats. 1927, ch. 265, § 1, p. 484.) For although it is true that in 1926 the wife did not have a vested interest in community property during her husband's lifetime, and some reference was made to this in the opinion, nevertheless at the moment of his death her interest did become vested, and this was duly

---

[1]In 1972, the section was amended to read "Notwithstanding the provisions of Sections 5105 and 5125 of the Civil Code . . . ." (Stats. 1972. ch. 194, § 1.)

noticed by the court in *Blethen* (p. 101). At that moment the wife became entitled to her share of the proceeds of the policies. This had been decided in 1922, in *New York L. Ins. Co.* v. *Bank of Italy,* 60 Cal.App. 602 [214 P. 61]. In the present case, plaintiff wife did not become entitled to her part of the proceeds (although she had an interest in the premium money) until the moment of her husband's death. The difference in the theory of vesting during the husband's lifetime therefore is not a valid distinction for present purposes.[2]

Besides, when plaintiff married in 1962 and thereafter acquired community property, the property was always subject at least to the laws which were in effect at that time, including section 10172. As examples, despite the wife's vested interest in the community property, that property was subject to the management and control (which might be so ill-advised as to be disastrous) by the husband under Civil Code sections 172 and 172a. On the other hand, the husband was not entitled to control community property money earned by the wife until it should be commingled with other community property. (Civ. Code, § 171c.) "Vestedness" does not preclude the Legislature, which conferred the vestedness in the first place, from enacting reasonable legislation relating to the control and disposition of community property at least as to that later acquired.

In *Morrison* v. *Mutual L. Ins. of N.Y.,* 15 Cal.2d 579 [103 P.2d 963], decided in June 1940, it was held, among other things, that if the responsible officer in charge of the company's San Francisco office, being informed of the facts, stated on behalf of the company that the insured could not surrender the policy without plaintiff's consent and plaintiff relied upon such statement, the company would be estopped to deny those representations; and that the trial court erred in excluding evidence to that effect. Shortly after the decision in *Morrison,* the Legislature, in 1941, amended section 10172 (Stats. 1941, ch. 272, § 2, p. 1382), adding the protective requirement of written notice at the insurer's home office. As it was said in *Cooper* v. *United Benefit Life Ins. Co.,* 17 Cal.App.3d 911, 917 [95 Cal.Rptr. 320]: "The short period of time which elapsed between the decision and the amendment suggests that the amendment was enacted to facilitate the prompt payment of life insurance claims by eliminating the potential risks of double payment which faced insurers who had not received actual notice of an adverse claim to the proceeds of the insurance policy."

---

[2]There is, of course, the importance of the vesting created by Civil Code section 161a in respect of the wife's interest in a policy during the husband's lifetime, especially upon dissolution of the marriage.

That the rule of the *Blethen* case has been approved many years after the creation of the vested right of the wife to community property appears from the reference to *Blethen* in *Tyre* v. *Aetna Life Ins. Co.,* 54 Cal.2d 399, 406 [6 Cal.Rptr. 13, 353 P.2d 725]. In the *Tyre* case. *section* 10172 likewise is cited.

It is contended by appellant that in order to save its constitutionality section 10172 must be regarded as allowing a reasonable time for a widow to give the written notice at the home office. But what is a reasonable time? Appellant asserts that the 72-day period is a reasonable one. If this were so even in a single case, probably few insurers would deem it prudent to make payment until at least that time had expired, and probably more. But one of the prime purposes of life insurance is to place money at the ready disposal of the beneficiaries soon after the death of the insured. The policy in the instant case, as in many others, calls for immediate payment. At first blush, it might seem that a widow's rights, if she be a named beneficiary, would not be subjected to delay by requiring a reasonable time for a *wife* to appear. But this does not follow. The insurer would have to find, at its peril, that the lady named as beneficiary truly was the wife of the insured at the moment of his death. Although in most cases it is likely that she would be, an insurer could not well take the chance of paying and discovering that there had been a change in the marital situation. But this is not all. The company, in order to avoid possible double payment, would have to postpone honoring the named beneficiary, even if she be described as wife, until the company has made itself sure that none of the premiums had been paid from community property of the decedent and a former wife, if the policy were not covered by dissolution decree or agreement, as in *Grimm* v. *Grimm,* 26 Cal.2d 173 [157 P.2d 841]. The interpretation contended for by plaintiff would likely be of disadvantage to a vast majority of wives who are named as beneficiaries and who survive their husbands, because of the compulsion placed upon insurers to investigate marital situations to a considerable extent before making payment.

Other complications which suggest themselves are those relating to those life insurance policies, the purpose of which is the carrying on of a business. Payment could not safely be made to partners or associates named as beneficiaries until that vague period known as a "reasonable time" for a wife or possibly a former wife to appear had expired. Then, there is the matter of interest. If the policy calls for an immediate payment, as the one in this case does, interest must be paid from the time the application becomes due and payable. (*Nesbit* v. *MacDonald,* 203 Cal. 219, 222 [263 P. 1027]; *Flynn* v. *California Casket Co.,* 105 Cal.App.2d 196, 208

[233 P.2d 131].) Apparently the insurer would be obliged to pay interest, although it could not safely make payment to the named beneficiary. It is not a sufficient answer to these difficulties to say that the insurer would have the right to interplead. Interpleader takes time and money. The Legislature has decided, by enactment of section 10172, that the balance of necessities or convenience is in favor of prompt payment. Recovery from beneficiaries who have been paid something to which they were not entitled is provided for by section 10175 of the Insurance Code. No doubt this provision is not effective in some cases and is less ready in all where widows seek to enforce their claims. But again, the Legislature was not obliged to provide the best possible remedy for some widows who were not informed of their husbands' affairs, at the expense of delayed payments to a multitude of beneficiaries, including widows among them.

Appellant argues that although there is nothing in the record to show that the insurer at all times had knowledge of her standing as a wife, it must be assumed that within its file it would be disclosed that the decedent did have a wife and that premiums were deducted from his earnings. But even if it were so assumed, these facts would not diminish the protection given to the insurer by section 10172. The insurer need not make an examination or establish a cross-index system in order to inform itself of possible claimants other than the named beneficiaries. In *Morrison* v. *Mutual L. Ins. of N. Y., supra,* it was held that the mere fact of receipt of premiums from the wife could not establish knowledge of the company that she was the owner of plaintiff's policy (15 Cal.2d 587).

It is further argued by appellant that the company surely knew that the decedent had a wife because it made payment under policy 5500-K, not only to decedent's three children, but also to her as fourth beneficiary. Here again, because of section 10172 the company was not obliged to make inquiry. It is, of course, possible for a wife to agree with her husband that others may be named as beneficiaries. The company need not investigate the relationship, whether cordial or hostile, of those persons to whom by the terms of the policy it must make payment.

We take notice of Justice Rattigan's concern about the effect of *Sniadach* v. *Family Finance Corp.,* 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820]; *Randone* v. *Appellate Department,* 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13]; and *Adams* v. *Egley,* 338 F.Supp. 614, on the constitutionality of section 10172 and on the viability of the *Blethen* case. *Sniadach* and *Randone* have to do with affording a reasonable opportunity to be heard in the creditor-debtor context for the party against whom the property is taken by operation of law. Those cases are essentially

different from the one at bench. In those cases, the actor is the creditor, not an insurer obliged, by contract, to make payment to a named beneficiary; in those cases, the actor is seeking to get a payment himself; he knows exactly who is his adversary; he calls upon the processes of the state to assist him. It is true that in exceptional cases the requirement of state action may be satisfied when that action is taken by one who is not a state official. But these are extraordinary cases. *Adams* v. *Egley* holds that the repossession of collateral (automobiles, in that case) by a secured creditor cannot be justified under California Uniform Commercial Code section 9503, even though the act of repossession be effected by a private party, not a state agent, because that statute does not provide for prior notice and is therefore unconstitutional. (It may be noted that in *Hutchison* v. *Southern California First Nat. Bank,* 27 Cal.App.3d 572 [103 Cal. Rptr. 816], decided more recently than the *Adams* case, section 9503 of the Cal. U. Com. Code, although not attacked on constitutional grounds, was applied to pledge of stock certificates; and also that in *Oller* v. *Bank of America,* 342 F.Supp. 21, the court came to the opposite conclusion from that in *Adams* v. *Egley.*) But whatever judicial decisions may be made as to section 9503 of the California Uniform Commercial Code and its applications, that section has to do with plainly identifiable persons, creditor and debtor, whose interests in the event of default are potentially antagonistic. The security provisions of the California Uniform Commercial Code have nothing to do with the protection of an insurer which simply wishes to fulfill its contractual obligation with expedition.

The judgment is affirmed.

Bray, J.,* concurred.

**RATTIGAN, J.,** Concurring.—In my opinion, the record herein fairly shows that, when respondent life insurer paid the proceeds of both policies, it knew (or was chargeable with actual knowledge) of appellant's identity, and of her status as the insured's widow with at least a potential claim to a community interest in the policies; and that appellant had no knowledge of either policy until respondent paid the proceeds of the second one to her and the other designated beneficiaries. Under these circumstances, I am troubled by the peremptory application and effect of Insurance Code section 10172, and by the question whether its operation is currently supported by the decision principally cited in this respect. (*Blethen* v. *Pacific Mut. Life Ins. Co.* (1926) 198 Cal. 91, 102-103 [243 P. 431].) As is pointed out in the main opinion, my concern is based upon more recent decisions which hold that

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

a person may not constitutionally be deprived of "property" without notice and a reasonable opportunity to challenge the prospect. (*Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337, 341-342 [23 L.Ed.2d 349, 353-354, 89 S.Ct. 1820]. See, e.g., *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536, 540, 547-552 [96 Cal.Rptr. 709, 488 P.2d 13]; *Adams* v. *Egley* (S.D.Cal. 1972) 338 F.Supp. 614, 618-619 and authorities cited.) I recognize that these decisions are factually distinguishable; my concern arises from the broad constitutional principles they define, not from any apposite facts. Despite my concern, I acknowledge the commanding authority under which the *Blethen* decision binds this court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]), and that Insurance Code section 10172, as applied in the present case, is unconstitutional only if the Supreme Court says so. I therefore concur in the judgment.

Appellant's petition for a hearing by the Supreme Court was denied May 9, 1973.