[Civ. No. 37215. First Dist., Div. Four. Mar. 3, 1976.]

MARGERY L. SCHNEIDER, Plaintiff and Appellant, v.
STANDARD OIL COMPANY OF CALIFORNIA,
Defendant and Respondent.

**COUNSEL**

Edward A. Friend for Plaintiff and Appellant.

Pillsbury, Madison & Sutro, Noble K. Gregory, James N. Roethe and Michael H. Salinsky for Defendant and Respondent.

**OPINION**

**EMERSON, J.***—Plaintiff appeals from a summary judgment entered in favor of respondent Standard Oil Company of California (hereafter referred to as Standard). In her complaint, plaintiff alleged that she was the owner of certain shares of Standard stock which her deceased husband (hereafter Schneider) had acquired under a "Stock Plan" created by Standard for the benefit of its employees. This stock had been sold by Standard and the proceeds of the sale had been distributed to Schneider (and through him to certain of his creditors) prior to his death.

Schneider had been employed by Standard for some 26 years. Toward the end of his career, Standard became aware that Schneider had borrowed several thousand dollars from Standard customers with whom

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

he had had contact, and that he had failed to repay these sums. Since this practice was in violation of certain company rules, Schneider was asked to resign. His resignation was tendered and accepted, and he was considered an early retiree with his retirement date set at November 1, 1970.

In November 1970, Standard was served with an order to show cause and a temporary restraining order in an action brought by Fletcher Oil & Refining Co., one of Schneider's creditors, restraining Standard from distributing any funds from the stock plan to Schneider, his agents or representatives. All such payments were then stopped.

Standard then learned that Fletcher Oil actually represented five of Schneider's creditors who were making claims against his employment benefits, totaling $45,000. At about this time Standard also realized that Schneider had received from it over $5,000 in advances for travel expenses which he had never incurred.

Negotiations took place between the attorneys for the creditors, for Standard, and for Schneider in an attempt to reach a settlement of the claims against him. In December 1970, an agreement was reached whereby Schneider was allowed to retain certain other employee benefits consisting of life insurance, an annuity plan, some of the stock and an amount in cash. The remainder of the proceeds of his interest in the stock plan was to be distributed among his creditors in proportion to their claims. Under this plan, each creditor received approximately $.45 on the dollar.

Schneider, with the approval of his attorney, wrote to the administrator of the stock plan requesting that his shares be sold and that seven separate checks be issued. The trustee sold the shares and issued the checks, and on January 20, 1971, Schneider endorsed six checks over to the five creditors and Standard, respectively. He retained the seventh check, which represented the remainder of the stock and the cash to which he was entitled. Plaintiff was unaware of the negotiations just related and of the settlement described. On learning of the facts after her husband's death she demanded of Standard the proceeds of the stock sale and thereafter filed the within action.

It is undisputed that Schneider's interest in the stock plan was community property. (See Civ. Code, § 5110.) At the time that he disposed of the property in 1971, Civil Code section 5105 vested the power of management and control of the community property in the

husband, subject only to the restriction that he not give it away without his wife's consent. (See *Gantner* v. *Johnson* (1969) 274 Cal.App.2d 869, 876 [79 Cal.Rptr. 381].) ■ It is well established that community property may properly be used to satisfy the husband's debts (*Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557, 562-563 [63 Cal.Rptr. 13, 432 P.2d 709]; *Grolemund* v. *Cafferata* (1941) 17 Cal.2d 679, 688 [111 P.2d 641]), and nothing in the record before the superior court suggests that an exception to this rule is applicable in this case. (See *Provost* v. *Provost* (1929) 102 Cal.App. 775, 781 [283 P. 842], allowing reimbursement to the community for funds used to improve the husband's separate estate.) It thus appears that Schneider's debts were properly settled out of the proceeds of the stock plan.

Plaintiff claims that the trial court erred in granting Standard's motion for summary judgment because "Standard breached its fiduciary duty to plaintiff; or, at least, a trier of fact could so find." Plaintiff, however, cites no authority for her proposal that Standard owed her a fiduciary duty, or that Standard could in any way be considered a trustee of either an express or implied trust of which she was a beneficiary. Even if plaintiff could show statutory or case law as support for her position, the facts of this case appear to be controlled by Civil Code section 5106 which states: "Notwithstanding the provisions of Sections 5105 and 5125, whenever payment or refund is made to an employee, former employee or his beneficiary or estate pursuant to a written retirement, death or other employee benefit plan or savings plan, such payment or refund shall fully discharge the employer and any *trustee* or insurance company making such payment or refund from all adverse claims thereto unless, before such payment or refund is made, the employer or former employer, where the payment is made by the employer or former employer, has received at its principal place of business within this state, written notice by or on behalf of some other person that such other person claims to be entitled to such payment or refund or some part thereof or where a *trustee* or insurance company is making the payment, such notice has been delivered by the employer to the home office of such trustee or such insurance company or has otherwise been received thereby. Nothing contained in this section shall affect any claim or right to any such payment or refund or part thereof as between all persons other than the employer and the trustee or insurance company making such payment or refund." (Italics added.) Under this section it is clear that both Standard and Crocker Bank, trustee of the stock plan, are protected against the adverse claim of plaintiff for payment to Schneider of his interest in the stock plan.

■ Plaintiff challenges the constitutionality of Civil Code section 5106, alleging that it does not give adequate notice to a wife as a claimant, and citing *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820]; *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13]; *Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011]; *Fuentes* v. *Shevin* (1972) 407 U.S. 67 [32 L.Ed.2d 556, 92 S.Ct. 1983].) However, the constitutionality of virtually identical language appearing in Insurance Code section 10172 has been upheld.[1] In *Leonard* v. *Occidental Life Ins. Co.* (1973) 31 Cal.App.3d 117 [106 Cal.Rptr. 899], the Court of Appeal recognized the authority of the Supreme Court case of *Blethen* v. *Pacific Mut. Life Ins. Co.* (1926) 198 Cal. 91 [243 P. 431], and made the following comments: "In *Blethen* . . . it was recognized that the insurance company, having contracted with the husband and having promised to pay the proceeds of the policy to whomsoever he designated, could do nothing but fulfill its contract in the absence of notice of any adverse claim (pp. 101-102). This was even before the Legislature gave specific approval and assurance to life insurance companies by enacting section 10172. The court balanced the interests of wives who are ignorant of their husbands' affairs and those who may be defrauded by connivance with officials of the insurer against serious impairment of the usefulness of life insurance policies which would result from the almost intolerable burden of determining in each instance prior to payment whether or not the premiums were paid out of community funds and, if so, what proportion was so paid, as well as the burden of investigating any change in the marital situation and relations of the insured. The court ruled as it did 'in harmony with a sound public policy having for its purpose the promotion of the free writing of life insurance' (p. 103). The *Blethen* case has remained intact and its ruling has been reinforced by the enactment of section 10172. The reasons given by the Supreme Court in *Blethen* remain equally valid today." (*Id.,* at p. 120.)

In enacting Civil Code section 5106, the Legislature obviously intended to encourage employers to provide retirement, savings and other benefit plans for their employees by protecting the employer from

---

[1]Insurance Code section 10172 reads: "Notwithstanding the provisions of Sections 5105 and 5125 of the Civil Code, when the proceeds of, or payments under, a life insurance policy become payable and the insurer makes payment thereof in accordance with the terms of the policy, or in accordance with the terms of any written assignment thereof if the policy has been assigned, such payment shall fully discharge the insurer from all claims under such policy unless, before such payment is made, the insurer has received, at its home office, written notice by or on behalf of some other person that such other person claims to be entitled to such payment or some interest in the policy."

the "intolerable burden" of monitoring the marital status of its employees at all times when the employee contributes to, or seeks to recover from, these plans. Plaintiff argues that a different rule should apply for employee benefit plans than for insurance policies, noting that *Leonard* emphasized the likelihood that proceeds from the insurance policy would be needed by the beneficiary immediately after the insured's death. An employee who has invested a substantial sum in an employee benefit plan might also require immediate receipt of the proceeds if an unforeseen emergency arose, or, as in Schneider's case, in the event of a suit by creditors. It thus appears that the rationale of *Blethen* and *Leonard* supports the constitutionality of Civil Code section 5106.

The judgment is affirmed.

Rattigan, Acting P. J., and Christian, J., concurred.