[Civ. No. 7727.   First Appellate District, Division Two.—March 9, 1931.]

HILDA B. JENKINS, Respondent, v. HAZEL STOWELL JENKINS, Appellant.

Tanner, Odell & Taft for Appellant.

W. I. Gilbert for Respondent.

PARKER, J., *pro tem.*—This action is one to determine conflicting claims to the benefits of a life insurance policy. Judgment in the court below was for the plaintiff. The policy in question was one issued by the Bankers Life Company, a corporation, and according to the terms thereof a certain amount of money was to be paid to the named bene-

ficiary upon the death of the insured, one John J. Jenkins. It is unnecessary to detail the original pleadings. Suffice it to state that the action was commenced against the insurance company and that this company thereafter deposited in court the full amount due under the policy, whereupon Hazel Stowell Jenkins was substituted as defendant and the company discharged from any further claim or liability and dismissed from the case. Therefore all questions affecting the said policy as between the insurer and the insured or his beneficiaries are not within the scope of the present appeal. The only question is as to which of the parties here is entitled to recover the amount now deposited in court. It might be further noted that the defendant Hazel Stowell Jenkins appears and urges her right in several capacities, namely as the surviving wife of the insured, admittedly deceased, and as the executrix of the estate of said deceased spouse and finally as the sole legatee under the will of the decedent, which said will is duly of probate. It might also be noted, merely by way of completing the record that the issues between the parties are joined not only by the original complaint and answer but also through a cross-complaint and answer thereto; the result of the pleadings being to assert the claims of both parties in the various capacities under which they or either of them claim. Inasmuch as both parties claim, to some extent, by virtue of marriage and the plaintiff was the first wife of the decedent and the defendant the second, we will, with this fact in mind, and in order to avoid confusion, not make reference to the parties as the first or the second wife but refer to each merely as plaintiff and defendant.

Plaintiff and John Jenkins were married in the year 1896 and were husband and wife on the thirtieth day of April, 1913, on which latter date the policy of insurance was issued. The policy by its terms obligates the insurance company to pay the sum named therein on receipt of due proof of death of John J. Jenkins, if such death occurs prior to the thirtieth day of April, 1939, and while this policy is still in force to Hilda B. Jenkins, wife of the insured, if living; otherwise as hereinafter designated, with the right of the insured to change the beneficiary. Thereafter marital difficulties arose between the spouses and on December 13, 1924, a final decree of divorce was entered between the parties;

antedating this was the interlocutory decree of divorce entered December 12, 1923. Within a day after the entry of the said final decree John J. Jenkins and the defendant Hazel Stowell Jenkins intermarried, and on February 3, 1926, the date of the death of John J. Jenkins, the said parties were husband and wife and the said Hazel Jenkins is the surviving widow of said John Jenkins. At no time was the beneficiary changed in the policy of insurance; at the date of the death of the insured the beneficiary remained as originally named, to wit, Hilda B. Jenkins, plaintiff.

At this stage of the record we meet the first contention of the defendant and it may properly be disposed of at the outset. Indeed, if defendant were correct in this contention there would be little need of further discussion. The contention of the defendant is that while the policy designates as the beneficiary of the proceeds thereof "Hilda B. Jenkins, wife of the assured, if living" yet the designation "wife" is as controlling as the designation "Hilda B. Jenkins" and that therefore the person who was the wife of Mr. Jenkins at the time of his death, is the beneficiary named in the policy. Much authority is presented by defendant in support of this contention and in many instances the language employed would give support to defendant's claim. It may be stated that such a rule is applied in many jurisdictions when dealing with insurance policies issued by benefit associations or fraternal orders but the rule thus announced seems to be more one of construction of the by-laws or regulations governing the society or organization issuing the policy. And in those jurisdictions wherein this rule finds support there is a clear distinction made between policies of benefit or fraternal societies or organizations and policies issued by exclusively insurance corporations, or as it is sometimes phrased "old line companies". To the latter class of companies or policies by such companies the rule has no application. There is an exhaustive discussion of this entire subject to be found in 57 American Law Reports, commencing at page 381, in which will be found collected the authorities of many jurisdictions. The general rule is that a policy of life insurance or a designation of beneficiary valid in its inception, remains so, although the insurable interest or relationship of the beneficiary has ceased. And the authorities agree that the words "wife of the assured"

as used in the policies such as the one before us are purely descriptive. As the case presented will involve numerous points, each demanding discussion, we will leave this branch of the case with citation of authority supporting the views announced, it being our conclusion that under the terms of the policy the plaintiff was clearly the beneficiary thereunder, designated as such by the insured and remaining as such to the time of the death of said insured. (37 Cor. Jur., p. 567; *Connecticut Mut. Ins. Co.* v. *Schaefer*, 94 U. S. 457 [24 L. Ed. 251, see, also, Rose's U. S. Notes]; *Filley* v. *Illinois Life Ins. Co.*, 91 Kan. 220 [L. R. A. 1915D, 130, 137 Pac. 793]; *Filley* v. *Illinois Life Ins. Co.*, 93 Kan. 193 [L. R. A. 1915D, 134, 144 Pac. 257]; *Courtois* v. *Grand Lodge, etc.*, 135 Cal. 552 [87 Am. St. Rep. 137, 67 Pac. 970]; *Sheehan* v. *Butchers' etc. Assn.*, 142 Cal. 489, 496 [76 Pac. 238]; *Caldwell* v. *Grand Lodge*, 148 Cal. 195, 198 [113 Am. St. Rep. 219, 7 Ann. Cas. 356, 2 L. R. A. (N. S.) 653, 82 Pac. 781].)

Defendant next contends that whatever rights plaintiff may have had or which she may now claim to the proceeds of the policy were lost by reason of a property rights agreement entered into between plaintiff and her then husband John J. Jenkins on August 31, 1922. It is admitted that on the date claimed an agreement purporting to settle forever the property rights of plaintiff and her husband was signed. In that agreement the husband was described as the first party and the plaintiff as the second party. The provision thereof to which defendant in the present action directs attention is as follows: The second party does hereby release and relinquish forever all right, title and interest and claim of any kind or nature whatsoever, including all the rights of inheritance, maintenance and community interest which said party now has or may hereafter in any manner acquire in or to any property which shall be a part of the estate of the said party of the first part in the event of his death, whether the same be real or personal property, or the separate property of said first party, or property of any kind acquired by said first party in which said second party but for this agreement might now or hereafter have any interest. The plaintiff as stated, conceding the execution of the agreement and the provision quoted, insists, however, that there be considered therewith another

provision in the same agreement, which is as follows: "It is further understood and agreed that the party of the second part has entered into this contract upon the direct representation, upon which, in signing the contract she has acted, that the party of the first part has made a full and complete disclosure to her of any and all properties which he now, either directly or indirectly owns, as shown by a list of properties hereto attached and made a part hereof, and that the party of the second part shall not be bound by the terms of this contract in so far as any property which is not listed on said attached list." There is no dispute as to the contract containing this provision and it is not disputed that there was attached to the agreement the list referred to. This list enumerates much personal property even to the extent of including club memberships and other contracts but it contains no mention of any insurance policy or policies nor any general language that by indirection might refer to any policies of insurance. Little further need be said regarding the contract. It is too plain that this contract could have no effect upon the policy here in question or the rights of either plaintiff or the deceased husband therein. Defendant here claims that the contract assigned to the husband all of the rights of the plaintiff in the policy and that from the date of the contract the policy and the proceeds thereof, actual or anticipated, became the separate property of the husband. The contract negatives any such claim. The contract specifically designated the property involved or affected thereby and excludes the policy. The effect of the restrictive clause is claimed to have been aborted by the fact that at the time of the execution of the contract both parties knew of the policy of insurance and that there was therefore no need of specifically mentioning it. This argument would be as effective to support the conclusion that mention of the policy was intentionally omitted. Just why any mention of the policy was not made would be purely speculative inasmuch as the record is silent thereon. We must concede the fact that it was not mentioned or by reference included amongst the items or properties to which the waiver of plaintiff was restricted. In leaving this branch of the case we might note that even if we concede all that defendant here claims it would amount only to a waiver of the wife's community interest in the

policy and the question of what community interest, as such, she may have had in the policy or the proceeds thereof, will be hereinafter discussed.

The next phase of discussion involves the divorce action between the plaintiff and John J. Jenkins. The judgment-roll in the divorce proceedings was offered in evidence. This discloses that in the complaint of plaintiff she alleged that there was no community property and the judgment and decree following recited that the allegations of the complaint were true; in other words the decree in divorce determined that there was no community property. Defendant then urges, under the authority of *Brown* v. *Brown*, 170 Cal. 1, 8 [147 Pac. 1168], that this judgment in divorce, having became final, determined that the policy of insurance was not community property. In the Brown case the policy involved was of a different nature. There the proceeds were payable to the estate of the insured and no question of gift was involved. The husband, Brown, was both the insured and the beneficiary, at least for practical purposes, in that his estate was the beneficiary. The rights of no third persons intervened until the death of Brown, whereupon the proceeds of the policy would go to his heirs. The effect of the decision was that this policy was the separate property of Brown and that by reason of the divorce judgment the wife was estopped from claiming any community interest therein. We might concede the principle of the cited case and yet be far from a solution of the problem before us. The plaintiff here occupies a dual position. If the doctrine of the Brown case is applied to its utmost the extent of the holding would be that by reason of the decree in the case of *Jenkins* v. *Jenkins*, the plaintiff lost any claim to community rights in the policy. But it is obvious that her claim here is not being asserted upon a basis of community right. We may here, to identify the reference hereinafter to be made, cite the case of *New York Life Ins. Co.* v. *Bank of Italy*, 60 Cal. App. 602 [214 Pac. 61]. With that case in mind, and it is unnecessary to quote therefrom, let us assume that the facts in this instant case were just a little changed. Assuming, for instance, that Jenkins was carrying a policy of insurance upon his life, the proceeds of which were payable to his sister or to his mother, and the premiums were being paid out of community funds. Under the Bank of

Italy case the wife would have an interest in the proceeds of the policy to the extent of her community interest in the amounts paid as premiums. Applying the doctrine of the Brown case and conceding that the decree divested her of any community right in the policy we would then be compelled to determine what, if any, effect the decree would have upon the beneficiary. The obvious answer is that such a decree would have no effect whatsoever upon the principal contract or upon the beneficiary thereunder, other than releasing the community claim of the wife. And, upon analysis, the facts here present a case no different. Under the doctrine of the case of *Blethen* v. *Pacific Mutual Life Ins. Co.*, 198 Cal. 91 [243 Pac. 431], which, by the way, is an excellent treatise of the general principles covering the field of community interest in life insurance policies, proceeds of an insurance policy the premiums on which are paid from community funds are not arbitrarily classified as community property. If the husband procured a policy of insurance upon his own life, with the beneficiary a stranger to the community, and the premiums were paid from community funds the beneficiary would, notwithstanding, be entitled to the amount of the policy in the absence of any claim by the wife or if the wife had consented to the payments. From the Blethen case it follows, and indeed is expressly decided, that in the absence of a claim of community interest the contract of insurance is valid and enforceable by the beneficiary under conditions such as we have here. Therefore, if we concede that Hilda Jenkins, the plaintiff, lost any and all community right that she may have had in the proceeds of the policy by reason of the decree of divorce it means nothing more than that her right as a partner in the community to demand a proportionate share of the proceeds of the policy, regardless of who might be beneficiary, was lost. The effect would have been the same had there been no divorce and she had consented to the community disbursements at the outset. Going into perhaps exhaustive detail, if the decree of divorce had determined expressly that the policy in question was community property and apportioned equally all interest therein, the effect thereof would have been and could have been only on the policy or its proceeds as of the date of the decree in the absence of further order. The policy could have been sold and the

then proceeds, if any, divided or, if it were carried through to the happening of the contingency upon which full payment would be made, the proceeds thereof would be divided proportionately to the community interest at the time of the decree. In no event would the policy or the contract of insurance evidenced thereby be held of no further effect or invalid for any purpose. The contract of insurance, if kept alive, would be subject to performance according to its terms, and the proceeds divisible according to the decree. The underlying theory of the Bank of Italy case and the Blethen case (both *supra*) is that as between the beneficiary and the insured the contract of insurance is in the nature of a gift, subjected to the general law that a husband, though in control of the community funds, cannot make a gift thereof without the consent of the wife. It is, however, settled law in this state that a transfer of community property by the husband to the wife is presumptively a gift and operates to vest the property thus given in the wife as her separate property. (*Pabst* v. *Shearer*, 172 Cal. 239 [156 Pac. 466].) It would then follow, though this point remains unnecessary to the decision herein, that the funds disbursed as premiums on the policy here in question having been community funds, under the cases cited each party had a right to one-half the proceeds. The husband having made a gift to the wife of his portion of those funds, then she alone would be entitled to the proceeds therefrom. That no misunderstanding result from the foregoing it will be noted that the language is restricted to the policy in question, wherein the wife is the beneficiary. Where a stranger to the community was the beneficiary, obviously under this phase of the argument there would be no gift to the wife of the husband's community interest.

Keeping in mind these principles the remaining questions are easy of solution. Adopting to the extreme the contentions of the defendant, we find this situation. John J. Jenkins, after the divorce, assumed the status of a single man, as far as his individual finances were involved. He had extant a policy of insurance upon his own life with Hilda Jenkins named therein as the beneficiary, legally competent as such, and reserving in himself the power of changing the said beneficiary, which power was never exercised. He continued payments upon the policy until his death at which

time the right of the beneficiary, theretofore expectant, became vested. The defendant here as executrix and heir claims that under such conditions the proceeds of the policy became the property of the estate of the insured. A mere statement of the facts is a complete answer to the contention. To .adopt such a theory would be to hold that policies of life insurance mean nothing and by such a holding the usefulness of life insurance would be at an end and this form of insurance would pass. Such a holding would necessarily mean that every insurance company would be restrained from paying out on any life insurance policy until a decree determining heirship had been entered or some other statutory mode of ascertaining the heirs had been pursued. The designation of beneficiary would mean nothing and the beneficent objects of life insurance would be thwarted. Life insurance occupies a too important place in our national and economic life to be thus treated.

There remains but one other point. As a final argument defendant contends that after the marriage of the defendant and the decedent approximately five quarterly premiums were paid and that these payments were made out of the community funds of decedent and the defendant. The finding of the trial court is against this contention, and from the record sufficient is disclosed to support that finding and nothing is presented sufficient to warrant our disturbing this determination of the fact. There was much from which it might be inferred that the payments were made during the last year from community funds but the showing is not of a character which would compel an overthrow of a finding to the contrary. The decedent was shown to have been a man of much capital with varied income producing interests. As president of different corporations he received a salary of some $1500 per month. From the date of his marriage with defendant it appears that these salary checks were deposited in a certain bank. That at the time of the marriage there was in said bank an amount in excess of the amounts paid out as premiums, and such excess was admittedly separate property. The evidence adduced upon which defendant seeks to have the finding upset shows that the premiums here involved were paid by check on this account. And likewise is there evidence purporting to show that after the marriage the old balance was dis-

sipated in the payment of debts existing before the marriage. The evidence further disclosed that Jenkins had other bank accounts or at least one other bank account during the period of his marriage and showed further that during the time of the marriage there had come to him from admittedly separate funds a sum approximating $150,000 with other sources of income inferrable. It is not pointed out just what amount of money remained in the estate nor in the account at either or any bank as of the time of death. We have gone carefully into the transcript of the bank account and the evidence concerning deposits and withdrawals therefrom. The statement of account indicates that funds were deposited in the account referred to from sources not identified. Checking the items of the account carefully, the most that can be said is that these salary checks for personal services were deposited in the said account and that the premiums on the insurance policy were paid out of the same account. This alone will not overcome the trial court's finding. Obviously the account represents but one small phase of the decedent's business affairs and the question of community funds, embracing a short period of time, as in the instant case, is not one entirely of inference and presumption. From the entire record it was for the trial court to determine, as a matter of fact, whether or not the payments on premiums represented an outlay from the community funds of decedent and this defendant, and having found, as indicated, against the claim of defendant in this respect, we find nothing in the record that compels a contrary conclusion. The amount in this particular account at the time of the marriage was in excess of $800 and the amount expended as premiums is less than $300. The testimony of defendant is that the entire original sum was expended in the payment of personal debts existing before marriage. However, taking the figures as defendant presents them, we can see that at the date of Jenkins' marriage with the defendant he had in this account the sum of $993.73; the sum defendant claims was paid out in discharge of personal obligations previously contracted was $883.90. The date of the said marriage was December 13, 1924. The salary due Jenkins seems from the record to have been paid in two semimonthly installments and such was the course of payment throughout. Therefore, on December 15th, two days after

the marriage, Jenkins had already earned his one-half month's salary of $750, and but two-fifteenths thereof would be community property. The account shows that on December 16th there was deposited therein the sum of $500. If defendant is correct in contending that this account was an account of salary earned, then we may likewise credit this first entry to that source. The rest then becomes a mere matter of calculation from which it is evident that there was in said account, and as separate property of decedent, a sum more than sufficient to absorb the payments laid out as premiums, which amount was $259.80.

Defendant urges certain alleged errors in the admission of evidence. In view of what we have said it becomes unnecessary to detail these claims. The evidence received in no event would have any bearing upon the rights of the parties hereunder.

The judgment is affirmed.

Sturtevant, J., and Spence, Acting P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 6, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 4, 1931.