## EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES v. BADEN et al.

### No. 8868.

United States District Court
S. D. California, C. D.

March 21, 1949.

Newlin, Holley, Sandmeyer & Tackabury, of Los Angeles, Cal., for plaintiff.

Fredericks & Fredericks and John D. Fredericks, Jr., all of Los Angeles, Cal., for defendants Baden and Peeler.

Robert L. Moore and Edwin D. Hamlin, both of Los Angeles, Cal., for defendants Westphal and Case.

YANKWICH, District Judge.

The above-entitled cause heretofore tried, argued and submitted, is now decided as follows:

(1) Judgment will be for the claimants and defendants Louise D. Westphal and Caroline Case that Caroline Case do recover the proceeds of the policy of insurance, No. MP9766616, issued by the plaintiff on March 27, 1935, in the face amount of $3,048.78, recovery to be in the amount now on deposit in the Registry of the Court, to wit $4,153.82.

(2) Judgment will be against the defendants and claimants Patricia Bosse Baden and Olive Peeler that they take nothing by this action.

Neither side to recover costs.

Counsel for Caroline Case to prepare findings under Local Rule 7.

## COMMENT.

This is an action for interpleader brought by the insurance carrier to determine rights to the proceeds of the insurance policy taken out on March 27, 1935, by William P. Baden, who died on May 4, 1948. His former wife, Patricia Bosse Baden, from whom he was divorced on November 21, 1938, and who was named beneficiary in the policy, claims the proceeds by reason of a pre-nuptial oral gift, made on April 26, 1935, as a birthday gift. Olive Peeler, her mother, was named contingent beneficiary.

I am of the view that the former wife has failed to prove an irrevocable gift and that her own and the deceased's conduct towards the policy command findings contrary to all her contentions.

It is undisputed that an insurance policy may be assigned orally if the assignment is accompanied by the delivery of the policy. But the evidence in proof of such gift must show a clear intent to make an irrevocable gift, when we are dealing with a policy which allows, as this policy does, a change of beneficiary. Unless the circumstances surrounding the gift show clearly an intention to surrender the power to change the beneficiary, no such surrender will be implied, and the donee will acquire no vested interest in the policy. 45 C.J.S., Insurance, §§ 421-422; 46 C.J.S., Insurance, § 1175(c) (1); Union Mutual Life Insurance Co. v. Broderick, 1925, 196 Cal. 497, 502-503, 238 P. 1034; Blethen v. Pacific Mutual Life Ins. Co., 1926, 198 Cal. 91, 98, 243 P. 431; Shoudy v. Shoudy, 1921, 55 Cal.App. 447, 449, 203 P. 437; Jenkins v. Jenkins, 1931, 112 Cal.App. 402, 297 P. 56; Lo Presti v. Manning, 1932, 125 Cal.App. 442, 445, 13 P.2d 1002; Mutual Life Insurance Co. v. Franck, 1935, 9 Cal.App.2d 528, 537-538, 50 P.2d 480; Mahony v. Crocker, 1943, 58 Cal.App.2d 196, 202, 136 P.2d 810.

A study of the evidence, in the light of these principles, calls for a denial of the

claim of the former wife. While there is evidence of some payments by her during the existence of the marital relation, there is written proof of only one payment of $10 on the premium subsequent to the severance of the marital relation. As the ground for divorce was non-support, and the marriage had endured only a little over three years, —it is improbable that a friendly association continued, as claimed, up to nearly the time of death which was limited to conversations and discussions about the policy and its financing by the former wife. The proof in the record on the part of the claimant Westphal shows, without contradiction, that she advanced over $700 to the payment of premiums during the very period during which the former wife claims she had paid an average of seven or eight monthly premiums a year. The making of loans, both before and after the severance of the marital relation, without the signature of the wife, the fact, *admitted by her,* that the physical possession of the policy was in the deceased, at least from late 1943 on, the fact that, on October 14, 1943, the former wife, in a letter written to the plaintiff, asserted as her only right, *not one derived from the alleged gift of the policy as a birthday present,* but an equitable interest to a portion of the policy because of payment of premiums, and the repeated attempts of the deceased, thwarted by the former wife, to change the beneficiary of the policy, are acts, on the part of both parties, which contradict the idea of an oral assignment of the policy and absolute waiver, *in perpetuity,* of the right to change beneficiary. In truth, this letter negatives any claim of gift. The letter reads (omitting salutation and conclusion)

"I would appreciate your confidential advice as to whether I can collect as beneficiary under the above policy.

"Since this policy was issued, I've been divorced from the above. However I am still named as the sole beneficiary. I have an equity in this policy through having kept up the premium payments for which I have receipts for. I do not wish to continue further payments unless I can be assured that the policy will be payable to me.

. "The policy is now in possession of the insured, and although he has requested me to sign for change of beneficiary I have refused because of my financial interest in the same."

Certainly a woman relying upon an irrevocable gift would not (1) *ask the confidential advice of an insurance company as to her rights,* (2) would not assert an equitable interest only *derived from payment of premiums,* or (3) state that unless she *has* the assurance that the policy would be payable to her, *she would not continue to make any payments.* A person of mature years owning a life insurance policy as an outright gift, and writing as intelligently as the writer of this letter did, would not, in asserting her rights, *fail to make any mention of a right* which is so superior to those asserted. Because contradictions between prior actions and claims after death are common in situations of this character, the courts of California have stated: "It is the policy of the law to receive with caution the claim to a gift asserted for the first time after the death of the alleged donor. It is therefore incumbent upon the donee to establish a completed gift by clear and convincing evidence, whether it be a gift *inter vivos* or *causa mortis.*" Lo Presti v. Manning, supra 125 Cal.App. at page 445, 13 P.2d at page 1003. And see, In re Estate of Walsh, 1944, 66 Cal.App.2d 704, 708–709, 152 P.2d 750.

■ As said in Union Mutual Life Insurance Co. v. Broderick, 1925, 196 Cal. 497, 502–503, 238 P. 1034, 1036: " *'In determining the question of the validity* of a gift, the *matter of the intent with which the delivery is made is always an important and essential element to be considered. Unless the donor intends to divest himself completely of control and dominion over the property given, the gift is incomplete and ineffectual.* What that intention was is a question of fact to be decided by the trial court, upon all of the evidence in the case. [In re] Estate of Hall, 154 Cal. 527, 98 P. 269. The policy of insurance here provided that the insured had the right to change the beneficiary from time to time, but "that in case the insured shall at any

time designate any person as absolute Beneficiary hereof or assigns this policy, said right to change the beneficiary shall thereupon cease. * * *" * * * *Assuming, therefore, that her testimony concerning the alleged gift be taken as true, there was still the question of fact for the trial court to determine as to whether Broderick intended the delivery of the policy as an absolute gift, or whether he reserved, as stated in the policy, the right to afterwards change the beneficiary.'"* (Emphasis added.)

So here the facts call for the conclusion that the delivery of the policy to the claimant Patricia Bosse Baden before marriage is not shown to have been made with the intent to make her irrevocably the beneficiary, regardless of what might happen in the future, and that her acts and the acts of the deceased, both before and after the date of the asserted gift, warrant an inference against such an intent. Nor do the facts show any community interest which can survive the sworn admission of the claimant Baden in her divorce complaint that there was "no community property" and the implications of the default decree which found accordingly. As to this and all other matters which it adjudicated the decree has the force of a binding contract. See, Brown v. Brown, 1915, 170 Cal. 1, 5–6, 147 P. 1168, 1171; Maxwell v. Maxwell, 1944, 66 Cal.App.2d 549, 551–553, 152 P.2d 530; Franklin v. Franklin, 1945, 67 Cal.App.2d 717, 720–721, 155 P. 2d 637; Majors v. Majors, 1945, 70 Cal. App.2d 619, 624, 161 P.2d 494.

I am also of the view that the evidence shows clearly repeated attempts to make Caroline Case, the deceased's aunt, the new beneficiary—attempts which were thwarted by the former wife's constant refusal to join in the request, but which, *so far as the deceased was concerned,* constituted a completed act. For there was nothing *that he could have done that he did not do* to induce the insurance company to change the beneficiary. A case of this character,—in which the insurer, by interpleader, has assumed a neutral position and is not seeking to benefit by a strict compliance with the requirements as to change of beneficiaries,—is a proper one in which to apply the equitable principle that a change of beneficiary has taken place when the insured has done all he could to comply with the provisions of the policy. 46 C.J.S., Insurance, § 1175(c) (2); Union Mut. Life Insurance Co. v. Broderick, 1925, 196 Cal. 497, 505–506, 238 P. 1034; Johnston v. Kearns, 1930, 107 Cal.App. 557, 290 P. 640; In re Aetna Life Insurance Co. v. Wood, 1934, 2 Cal.App.2d 579, 583–584, 38 P.2d 853; Estate of Burnett, 1941, 47 Cal. App.2d 464, 466, 118 P.2d 298. The company's refusals, because of its rightful or wrongful insistence, that the former wife should agree to the change of beneficiary, —especially when it had made loans on the policy, without her signature,—could not deprive Caroline Case of the benefit of the intended change. The testamentary letter of the deceased, dated August 16, 1943, directing delivery of the policy to the aunt, in case of death, confirms this intent. See, Claffy v. Forbes, D.C.Wash.1922, 280 F. 233, per Judge Neterer. Johnson v. White, 8 Cir., 1930, 39 F.2d 793; Kaschefsky v. Kaschefsky, 6 Cir., 1940, 110 F.2d 836; Collins v. United States, 10 Cir., 1947, 161 F.2d 64; Mitchell v. United States, 5 Cir., 1948, 165 F.2d 758, 2 A.L.R.2d 484; Rosenschein v. Citron, App.D.C., 1948, 169 F.2d 885; Kindig v. Kindig, 9 Cir., 1948, 170 F.2d 750. It also evidences the fact that the former wife's claim as asserted to him, during his lifetime,—was, at most, "what her community interest would amount to". And as already shown, none of the claims of the former wife has any validity.

Hence the ruling above made.