107 N.J. Super. 414 (1969)
258 A.2d 724
MILDRED GERHARD, INDIVIDUALLY AND GRACE BALLISTRERI AND MOSES DAVIS, EXECUTORS OF THE ESTATE OF HERBERT C. POLLARD, DECEASED, PLAINTIFFS,
v.
THE TRAVELERS INSURANCE COMPANY, AN INSURANCE CORPORATION, CALIFORNIA-TEXAS CORPORATION, A FOREIGN CORPORATION, AND CORNELIA M. HARRIS, ALSO KNOWN AS CORNELIA M. POLLARD, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided November 7, 1969.
*416 Messrs. Lebson & Prigoff, attorneys for plaintiffs (Mr. Milton Prigoff appearing).
Mr. Norman S. Costanza, attorney for defendant Travelers Insurance Company.
Messrs. Morrison, Lloyd and Griggs, attorneys for defendant California-Texas Corporation (Mr. William R. Morrison appearing).
LORA, J.S.C.
This is an action in which plaintiffs Mildred Gerhard, the daughter and sole beneficiary under the will of decedent Herbert Carson Pollard, and Grace Ballistreri and Moses Davis, executors of the estate of Herbert Carson Pollard, whose letters testamentary issued in Baltimore County, Maryland, bring suit on a life insurance policy which the deceased had held with defendant Travelers Insurance Company. Declaration is sought that either Mildred Gerhard or, in the alternative, the deceased's estate is entitled to the policy proceeds.
Defendant California-Texas Corporation (Caltex) obtained a group disability and death benefit insurance policy from Travelers. The deceased, an employee of Caltex until 1959, was an insured under the group policy and, on September 20, 1951, while in Sumatra-Indonesia designated "Cornelia Meerbeek Pollard, wife" as his beneficiary by filing with Caltex a change of beneficiary form which provided: "And the *417 right is reserved to revoke this designation and subject to due notice to the Employer to nominate a new beneficiary."
Paragraph two of the "Provisions" in the policy provided the manner in which the named beneficiary could be changed. That paragraph reads as follows:
2. Change of beneficiary. Any employee insured hereunder may designate a new beneficiary at any time by filing with the employer a written request for such change on forms furnished by the company, but such change shall become effective only upon endorsement thereof by the Employer on the insurance record card at the office of the Employer where the records of the Employee's insurance under this policy are maintained.
Upon such endorsement, the change shall relate back to and take effect as of the date the Employee signed such request whether or not the Employee is living at the time of such endorsement but without prejudice to the Company on account of any payment made by it before such endorsement.
The certificate of insurance held by decedent, dated October 1, 1952, refers to the terms, conditions and provisions of the group life insurance policy covering employees of Caltex issued by Travelers and states that a sum determined in accordance with the "Plan of Insurance" in said policy is payable to "Cornelia M. Pollard, wife as beneficiary," and that "Payment of the amount of the Employee's insurance under said Policy shall be made to the beneficiary designated by the Employee * * *." On the reverse side, and under the heading "Beneficiaries," the certificate further provides:
Under the group policy the Employee has the right to change the beneficiary. If there be no beneficiary designated by the Employee or surviving at the death of the Employee, the group policy provides that payment shall be made as follows: To the wife or husband of the Employee, if living at the death of the Employee; if no wife or husband of the Employee be then living, to the surviving children of the Employee * * *.
However, the certificate itself does not set forth the manner in which a change of beneficiary is to be effectuated.
It is uncontroverted that the deceased never filed a written request to change beneficiary or a designation of beneficiary *418 according to the provision in the policy, other than the one of September 20, 1951. However, on October 8, 1964 the deceased obtained a divorce from Cornelia Pollard in Circuit Court No. 2 of Baltimore City, Maryland. The divorce decree incorporated a separation agreement entered into on June 23, 1964, wherein Cornelia Pollard waived any further rights in the property of the deceased, the pertinent part reading as follows:
3. Pending the final decree of the Court, neither party will interfere with the rights or privileges of the other, and neither party will claim any rights in the ownership or property of the other, and all claims to each other's property is [sic] expressly waived.
4. That the provisions of this stipulation shall be incorporated in any decree or order passed by the Court having jurisdiction of the matter.
It is clear there was no discussion of the insurance at the time of the divorce or at the time of the separation agreement, Mrs. Pollard, who was not represented by counsel, simply stating she was surrendering her rights to everything her husband had.
The insured Pollard died on April 7, 1965, and on April 14, 1965 Moses Davis, an executor of decedent's estate, notified Caltex in writing of Pollard's death and enclosed a copy of the executors' appointment by the Orphans Court of Baltimore County. Subsequently, on April 19, 1965, Davis discussed the matter further with Caltex on the telephone.
By letter dated April 20, 1965 Caltex referred to Davis' letter of April 14, 1965 and telephone conversation of April 19, 1965, but stated their records "confirm that Cornelia M. Pollard, wife  is the designated beneficiary in connection with death benefits payable under the company's insured Annuity and Group Life Insurance Plans. We will contact Mrs. Pollard directly."
On April 21 or 22, 1969, Davis wrote H.F. McCabe, the Caltex benefits adviser, requesting that Caltex withhold any notification to the named beneficiary, Mrs. Pollard, due *419 to the stipulation in the separation agreement and the divorce decree, by the terms of which neither party thereto "claimed any interest in the rights or estate of the other."
The following day Davis wrote a letter to the New York Claim Division of Travelers, notifying them
* * * to continue the demand of Mrs. Gerhard that she has been designated beneficiary of the above issued certificated by her father, Herbert C. Pollard during the month of February, 1965, and that these certificated [sic] were given her as a inter vivos gift, and that I was present in the office of Mr. H.F. McCabe, Benefits Adviser of the Caltex Corporation when this matter was discussed with your representative or company over the telephone yesterday. Since I have furnished Mr. McCabe with copy of the Will of Mr. Pollard and the Stipulation in the divorce proceeding divorcing him from Cornelia Pollard, I am sure that you will find that Mrs. Gerhard is the rightful claimant under this policy.
Despite such notification by Davis and a subsequent visit to Caltex by Davis and Mrs. Gerhard, during which Davis expressed his intention to collect on the policy because he had possession of the same and Mrs. Gerhard had an inter vivos gift of the policy, and despite McCabe's telephone conversation regarding the policy with Travelers in their presence, Caltex nonetheless notified Cornelia Pollard of her status as named beneficiary and stated that if she would forward a death certificate, they would pay her the proceeds. Caltex advised Travelers of Herbert Pollard's death and of the divorce. Thereafter Caltex forwarded Travelers a copy of the deceased's death certificate and a notarized proof of claim statement by Cornelia Pollard requesting payment of the insurance benefits through Caltex. Thereupon, on June 14, 1965, Travelers paid the insurance benefits to Cornelia Pollard.
After the deceased divorced plaintiff Mildred Gerhard's mother and subsequently married Cornelia Pollard, plaintiff saw very little of him. However, in February 1965, having learned that her father was "emotionally ill" and living alone following the divorce from his second wife, she brought *420 her father from Baltimore to her home in New Jersey where he lived until his death in April 1965.
The testimony adduced by plaintiff concerning an inter vivos gift of the insurance certificate by the deceased to the plaintiff was contradictory. Mrs. Gerhard testified that after Moses Davis drew up the will for her father and it was executed in Baltimore on February 23, 1965, she brought him back to New Jersey that same day and thereupon, in New Jersey, the deceased handed his insurance policies (certificate) to plaintiff, saying, "These are my policies and I want you to have them." Plaintiff testified that she thereafter had the policies in her possession continuously until, after decedent's death on April 7, 1965, she turned them over to attorney Davis when she brought her father's body back to Baltimore for burial.
This account is at variance with that of Davis in this regard. He testified that he received the policies (including the certificate here involved) on February 23, 1965 at the time the deceased signed his will in Davis' Baltimore law office, first saying that Pollard delivered the policies to him, but then stating he thought that plaintiff handed him the policies to hold. In any event, he further testified he put them in the file in his office, simply noting at the time that defendant Mrs. Pollard was designated as beneficiary on the certificate. At best, the testimony leaves the court with considerable doubt that there was in fact an inter vivos gift of the certificate. It would appear that Davis had possession of the certificate. However, a finding of the existence or non-existence of an inter vivos gift is not necessary for a determination of entitlement to the proceeds of the policy.
Cornelia Pollard is not a party to this action. Although the amended complaint named Cornelia Pollard as a party defendant, plaintiffs were unable to serve her in New Jersey and, since Mrs. Pollard is not a resident of this State and had no contacts with New Jersey, the attempt to serve her by mail outside the State was without effect. R. 4:4. *421 Consequently, the court's decision herein can in no way affect the rights of Mrs. Pollard.
The court actually does not have to determine the relative rights of plaintiffs and the named beneficiary to the insurance proceeds since this action involves only one claimant against an insurance company and a group policy holder, unlike most of the cases cited by counsel which involved situations in which the insurance company had interpleaded  Metropolitan Life Insurance Co. v. Woolf, 138 N.J. Eq. 450 (E. & A. 1946); Metropolitan Life Insurance Co. v. Dinzik, 141 N.J. Eq. 336 (Ch. 1948); Travelers' Insurance Co. of Hartford v. Grant, 54 N.J. Eq. 208 (Ch. 1896); Metropolitan Life Insurance Co. v. Haggerty, 109 N.J. Eq. 663 (E. & A. 1932); Prudential Insurance Co. v. Deyerberg, 101 N.J. Eq. 90 (Ch. 1927); Prudential Insurance Co. of America v. Swanson, 111 N.J. Eq. 477 (E. & A. 1932); Prudential Insurance Co. of America v. Mantz, 128 N.J. Eq. 480 (Ch. 1941); Metropolitan Life Insurance Co. v. Tesauro, 94 N.J. Eq. 637 (Ch. 1923); Metropolitan Insurance Co. v. Clanton, 76 N.J. Eq. 4 (Ch. 1909); or in which the opposing claimants were otherwise before the court as the parties in interest  In re Chryssikos, 135 N.J. Eq. 451 (Prerog. 1944); Anderson v. Broad Street National Bank, 90 N.J. Eq. 78 (Ch. 1918); Sullivan v. Maroney, 76 N.J. Eq. 104 (Ch. 1909).
In the case at bar the only relevant question is whether, under the facts here present, the insurance company and group policy holder were entitled to rely on the express policy provisions specifying the procedure for changing beneficiaries, in view of their knowledge of the existence of an opposing claim.
Formal policy requirements for changing beneficiaries are, at least in part, designed for the protection of the insurance company. See Metropolitan Life Insurance Co. v. Woolf, supra, 138 N.J. Eq., at 452, 453. It follows, therefore, that an insurance company should ordinarily be permitted to rely on the absence of a change of beneficiary *422 form in making payment to a named beneficiary. The mere fact that plaintiffs informed Caltex and Travelers of their claims prior to the disposition of the proceeds does not mean nor mandate that defendants were required to give heed to such claims.
As Judge Pashman pointed out in Strohsahl v. Equitable Life Assurance Society, 71 N.J. Super. 300 (Ch. Div. 1962). "The overwhelming majority rule concerning a change of beneficiary by will is, that the change of a beneficiary must be made in the manner set forth in the insurance policy and, absent a provision in the insurance contract, any attempt to make such a change by will is ineffectual." He went on to say that the rule holding that an insurance company is ordinarily entitled to rely on a policy's change of beneficiary requirements "is based upon the need for expeditious payment and disbursement of insurance proceeds. Any different solution could only result in protracted litigation, confusion, and needless delay". (at 304, 305).
Apparently, it may have been more prudent for Travelers and Caltex, upon learning of the contested claims, to interplead, turning the $10,800 proceeds over to a court for a determination of the respective rights of the claimants and thereby voluntarily waiving their right to rely on the change of beneficiary provisions, Metropolitan Life Insurance Co. v. Woolf, supra, 138 N.J. Eq., at 457, but they were under no duty to do so.
The court need not decide whether plaintiffs, on being advised on or about May 1, 1965 that Caltex and Travelers were not going to pay them, could have protected their claims by seeking to enjoin the disposition of the proceeds; but, in any event, this was not done. Under the existing facts, therefore, the court holds that defendants were within their rights in paying the insurance proceeds to the named beneficiary.
Although it is the court's conviction the foregoing reasoning is dispositive of the case, however even if the defendants *423 had no right to rely on the policy provisions, the result would be the same.
It is settled in New Jersey that a named beneficiary has a vested right to insurance proceeds, subject to divestment according to the terms of the policy. Sullivan v. Maroney, supra, 76 N.J. Eq., at 109, 110, aff'd. 77 N.J. Eq. 565 (E. & A. 1910); Prudential Insurance Co. of America v. Mantz, supra, 128 N.J. Eq., at 486; Strohsahl v. Equitable Life Assurance Society, supra, 71 N.J. Super., at 304; Metropolitan Life Insurance Co. v. Woolf, 138 N.J. Eq., at 454, 455; In re Posey, 89 N.J. Super. 293, 303 (Cty. Ct. 1965) aff'd per curiam 92 N.J. Super. 259 (App. Div. 1966).
The cases cited by plaintiffs to the contrary are based upon special circumstances not present here. In Haggerty, Grant, Deyerberg and Chryssikos no vested rights of a named beneficiary were involved. Plaintiffs rely on the language in Chryssikos which states that because "a plausible reason was advanced why deceased did not arrange for a formal change of beneficiary," a gift to a third person not in conformity with the change of beneficiary clause would be upheld. As already mentioned, there was no named personal beneficiary in that case, the insured's estate being the beneficiary under the policy. But even if the Chryssikos reasoning were applicable here, the evidence fails to show a "plausible reason" for noncompliance in the present case.
The insured, who was "emotionally ill" when plaintiff Gerhard took him to New Jersey in February 1965 on the day he signed his will, died six months after his divorce and six weeks after making his will. However, the very fact that he was competent to make a will, that he did mention the policies to his daughter and attorney at the time, and his daughter's testimony that he did not become ill between the execution of his will and his death which occurred almost ten months after the separation agreement was entered into, lead the court to conclude that he could have prepared and submitted a change of beneficiary form before his death.
*424 There remains to be considered whether the rights of Cornelia Pollard were divested by the divorce and separation agreement under which she released her claims against her husband's estate. In John Hancock Mutual Life Insurance Co. of Boston v. Heidrick, 135 N.J. Eq. 326 (Ch. 1944), it was held that a separation agreement between a husband and wife which contained a general release of all claims to each other's estate did not divest the wife of her interest, as named beneficiary, since her claim under the policy was neither against him nor his estate, but was against the insurance company. Perhaps it may be said that case is distinguishable because the insurance policy made no express reservation of the insured's right to change the beneficiary. However, after examining authority in other jurisdictions, it is my opinion that the result must be the same in the present case.
True, several California cases have held that a wife who is the named insurance beneficiary may relinquish her rights by means of a property settlement agreement without there being any change of beneficiary under the policy. Sullivan v. Union Oil Co., 16 Cal.2d 229, 105 P.2d 922 (Sup. Ct. 1940); Shaw v. Board of Administration, 109 Cal. App.2d 770, 241 P.2d 635 (D. Ct. App. 1952); see also Dudley v. Franklin Life Ins. Co. Or., 440 P.2d 363 (Sup. Ct. 1968) and Tucker v. Brady, 305 F.2d 550 (9 Cir.1962), which applied California law, but these cases are not persuasive since they rely on the California rule that a policy beneficiary obtains no vested right but only a mere expectancy.
Moreover, even under the California rule, other cases have held that a general release under a separation agreement of a wife's claims against her husband's estate is insufficient to constitute a renunciation of her right to insurance proceeds as the named beneficiary if it does not clearly appear from the agreement that in addition to the segregation of the property of the spouses it was intended to deprive either spouse of the right to take under an insurance contract of the other. Prudential Insurance Co. of America v. Broadhurst, *425 157 Cal. App.2d 375, 321 P.2d 75 (D. Ct. App. 1958); Jenkins v. Jenkins, 112 Cal App. 402, 297 P. 56 (D. Ct. App. 1931). These cases hold also that the failure of an insured to change the beneficiary is indicative of an intent not to effect a change. 321 P.2d, at 78.
It is the court's conclusion that the reasoning in Wallace v. Mutual Benefit Life Insurance Co., 97 Minn. 27, 106 N.W. 84, 3 L.R.A., N.S., 478 (Sup. Ct. 1906), is applicable. There it was held that an agreement during the pending of divorce proceedings under which a wife relinquished all claims to her husband's estate did not affect her continuing right as named beneficiary to the insurance proceeds, since a beneficiary obtains a vested right to insurance proceeds, which proceeds thereupon become part of her separate property, subject only to divestment as provided in the policy. Such proceeds are not part of the husband's estate and consequently are not affected by a general release of all claims against the husband's estate. 106 N.W., at 85.
While it is true that in the Wallace case no right to change the beneficiary was reserved, and her interest in the policy was subject to be divested only by her death, the lapse of time or the failure to pay premiums, and hence was free from the control of her husband, both interests were separate and distinct and her release referred only to her husband's property, not to her property. She did not agree to release to him any interest in any property which she owned in her own right.
One further issue not raised by counsel deserves mention. The insurance certificate in question refers to the beneficiary as "Cornelia Meerbeek Pollard, wife." It might be argued that such words indicate that upon termination of Mrs. Pollard's status as wife of the insured, her status as beneficiary also terminated.
The general rule is that the addition of the words "husband" or "wife" in describing a named insurance beneficiary is descriptive only and must not be construed as a condition for the beneficiary's recovery of the proceeds. Annotation, *426 "Divorce of insured and beneficiary as affecting the latter's right in life insurance", 175 A.L.R. 1220, 1226 (1948). See also 44 Am. Jur.2d, § 1740, at 650, "Beneficiary divorced from insured." This court is not aware of any decision in New Jersey on this issue, but there is good reason to apply such rule herein since an analogous rule has been applied in the construction of wills. Stothers v. Flieger, 13 N.J. Super. 379 (Ch. Div. 1951).
In view of all of the foregoing, the court concludes that defendants acted within their rights in their disposition of the insurance proceeds and that they violated no duty to plaintiffs. Accordingly, judgment will be entered in favor of defendants and against plaintiffs dismissing the complaint.