The LINCOLN NATIONAL LIFE INSUR-
ANCE COMPANY

v.

Evelyn BLIGHT et al.

Civ. A. No. 75–1497.

United States District Court,
E. D. Pennsylvania,
Civil Division.

Sept. 18, 1975.

William H. Lowery, Arthur H. Rainey, Philadelphia, Pa., for plaintiff.

Edward B. McDaid, Farage & Shrager, Philadelphia, Pa., for K. M. Wilson, D. P. Stanford & B. K. Howard.

Herman R. Testan, Philadelphia, Pa., for E. Blight and Santo A. DiDonato.

## MEMORANDUM AND ORDER

CAHN, District Judge.

This is an action in interpleader brought by plaintiff, The Lincoln National Life Insurance Company (Lincoln), against competing claimants to the proceeds of a life insurance policy on the life of John H. Blight, who died on or about December 22, 1972. The claimants are the designated primary beneficiary, the contingent beneficiaries and the administratrix, c.t.a., of the decedent's estate. Lincoln interpleaded all of the claimants under 28 U.S.C. § 1335, the federal interpleader statute, which confers jurisdiction on this court in that the proceeds of the policy exceed $500 and there is minimal diversity of citizenship between at least two of the claimants. *State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967).

The proceeds of the policy are in the amount of $3,522.29 which was deposited in the registry of the court on July 10, 1975, pursuant to the aforesaid interpleader statute. By agreement of counsel for all of the claimants, summary judgment was entered in favor of Lin-

coln terminating its liability under the policy, setting a reasonable attorney's fee for its counsel in the amount of $400 and ordering reimbursement for its record costs in the amount of $38.56, which sums are to be disbursed from the amount previously paid into court.

Following an evidentiary hearing and oral argument I make the following findings of fact:

1. Lincoln issued a life insurance policy, No. 64–787609, to John H. Blight on August 15, 1946, in the face amount of $3,000.

2. On April 2, 1964, said policy was endorsed to name decedent's wife, Evelyn Blight, as the primary beneficiary if she survived the insured, and if not, the contingent beneficiaries were named as Santo A. DiDonato, stepson of the insured, Diane Blight and Brenda Blight, daughters of the insured.

3. On or about March 2, 1971, Evelyn Blight and John H. Blight entered into a Postnuptial Agreement which provided in paragraph 2(e):

> "Each of the parties hereto shall be entitled to take over, assume, and retain title to any and all life insurance on her or his respective life, and shall execute in favor of each other all required assignments of interest, waivers, releases, and other documents that may be required to sever and abrogate the other's interest in all such life insurance policies;"

4. Evelyn Blight and John H. Blight were divorced in December of 1971, in Pennsylvania.

5. John H. Blight died on or about December 22, 1972.

6. Prior to his death, John H. Blight did not change the beneficiary designations which had been endorsed on policy No. 64–787609 on April 2, 1964.

7. Evelyn Blight and John H. Blight accompanied each other to social events following the entry of the divorce decree.

8. John H. Blight's mother died October 14, 1972, who was the named bene-ficiary on another life insurance policy, and after her death he designated the new beneficiaries to be Diane P. Stanford and Brenda K. Howard, his children.

9. Evelyn Blight is a citizen of Pennsylvania.

10. Santo DiDonato is a citizen of Pennsylvania.

11. Diane Stanford, formerly Diane Blight, is a citizen of Texas.

12. Brenda K. Howard, formerly Brenda Blight, is a citizen of Texas.

13. Kathleen M. Wilson, administratrix, c.t.a., is a citizen of Pennsylvania.

## DISCUSSION

Evelyn Blight claims the proceeds of the policy as the designated beneficiary. Kathleen M. Wilson, administratrix, c.t.a., of the Estate of John H. Blight, claims the proceeds on the ground that the postnuptial agreement terminated Evelyn Blight's rights to receive the proceeds as designated beneficiary. The three contingent beneficiaries claim the proceeds on the grounds that the postnuptial agreement terminated the rights of the primary beneficiary but not their rights as contingent beneficiaries.

The conflict of laws rules of the Commonwealth of Pennsylvania determine which state law will apply to this case. 3A Moore's Fed.Practice ¶ 22.14[5]. Pennsylvania uses the significant relationships test, *see Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964). In applying that flexible test, it appears that Pennsylvania has the most significant contacts since three of the claimants are Pennsylvania citizens, the marriage was entered into in Pennsylvania, the postnuptial agreement was made in Pennsylvania and the divorce decree was entered by a Pennsylvania court.

It is clear that general release provisions do not divest a named beneficiary of an interest in the proceeds of a life policy. *Ninno v. Prudential Ins. Co. of America,* 50 Pa.D. & C.2d 102 (1970).

Pennsylvania cases, however, are silent on whether a relinquishment in a post-nuptial agreement of any ownership interest in a life policy divests a divorced spouse of the right to receive the life insurance proceeds as the designated beneficiary. The administratrix relies heavily on *Brewer v. Brewer*, 239 Ark. 614, 390 S.W.2d 630 (1965), for the proposition that a provision transferring and releasing any and all interest in certain life insurance policies set forth in a postnuptial agreement is a cancellation of the spouse's designation as beneficiary. The force of this decision is minimized by the concurring opinion of Associate Justice McFaddin which states:

> "However, I have concluded that we should now give notice to the Bench and Bar that we will re-examine our former cases when a case like this one is next presented to us. For myself, I hereby give such notice. I think the weight of authority, and certainly the better reasoned cases, are contrary to our holding in *Mabbitt v. Wilkerson, supra* [247 S.W.2d 201], and *Roman v. Smith, supra* [314 S.W.2d 225]."

Another Justice dissented.

The better rule is set forth in *Parrish v. Kaska*, 204 F.2d 451 (10th Cir. 1953) which construed California law in a situation where husband and wife entered into a property settlement agreement whereby the wife assigned and transferred to her husband all of her right, title and interest in certain policies on her husband's life including the right to change the beneficiary. A divorce decree was entered and thereafter the husband died without having changed the beneficiary. It was held that the former wife was entitled to the proceeds of the policy in the absence of an express provision renouncing her expectancy under the policy. The court held (p. 453):

> ". . . [T]hat the interest of a beneficiary designated in a policy of life insurance, under which the insured has the right to change the benefi-

ciary, is a mere expectancy; that a contract constitutes an equitable assignment or renunciation of an expectancy only if it expressly or by necessary implication so provides; that general expressions or clauses in property settlement agreements are not construed as including an assignment or renunciation of an expectancy if the agreement does not clearly show that the parties intended that in addition to the division of the property of the spouses they intended to deprive either spouse of the right to take the proceeds of an insurance policy on the life of the other; that expectancies under an insurance policy are regarded as waived only when it appears that the parties knew of the expectancies and their intention to disclaim any future rights which they might have under such expectancies is made clear in the contract; and that when a husband has the power to change the beneficiary in an insurance policy and fails to do so, this, in effect, amounts to a confirmation of the designation of the beneficiary in the policy . . ."

An analysis of the applicable clause in the Blight postnuptial agreement reveals that Evelyn Blight relinquished any claim to ownership of the policies on her husband's life and agreed to execute any documents to sever her interest in such policies. There is no provision explicitly waiving her rights to receive the proceeds as designated primary beneficiary. Since John H. Blight was the owner of the policies pursuant to the postnuptial agreement, he had the right to change the beneficiary but apparently elected to continue the designation of his former wife as primary beneficiary. Furthermore, he did change the beneficiary of another policy shortly before his death but did nothing in regard to the policy involved in these proceedings.

■ The rule that a postnuptial property settlement agreement dealing with ownership of insurance policies does not, in the absence of explicit language to the contrary, divest a divorced spouse of

**516**

the right to receive as designated beneficiary the proceeds of a life policy is found in varying degrees in the following cases: *Aetna Life Insurance Company v. White*, 242 So.2d 771 (Fla.App. 1970); *Rountree v. Frazee*, 282 Ala. 142, 209 So.2d 424 (1968); *Zachary v. Security Life and Trust Company*, 4 N.C.App. 221, 166 S.E.2d 495 (1969); *DeVane v. Travelers Insurance Company*, 8 N.C. App. 247, 174 S.E.2d 146 (1970); *Grimm v. Grimm*, 26 Cal.2d 173, 157 P.2d 841 (1945); *Mullenax v. National Reserve Life Insurance Co.*, 29 Colo.App. 418, 485 P.2d 137 (1971); and *O'Toole v. Central Laborers' Pension & Welf. Funds*, 12 Ill.App.3d 995, 299 N.E.2d 392 (1973). Although a contrary rule was applied by the Oregon court in construing California law in *Dudley v. The Franklin Life Insurance Company*, 250 Or. 51, 440 P.2d 363 (1968), I am of the opinion that Pennsylvania would not follow that decision but would require explicit language in a postnuptial agreement to divest the former spouse of his or her rights as designated beneficiary. In the analogous situation where divestiture of an interest in a revocable inter vivos life insurance trust was in issue, a Pennsylvania court held that the former spouse of the decedent settlor, who was divorced from him after he executed the trust document, was still entitled to her original rights under the trust agreement. The statute [20 Pa.C.S.A. § 2507 (2)] which divests a divorced person of all rights under the will of the former spouse executed before the divorce, was held inapplicable to this situation. *Mailey Estate*, 51 Pa.D. & C.2d 259 (1970). Of course, each case must be decided on those facts peculiar to it.

Here, the decedent had ample opportunity to change the beneficiary, if he so desired, and, in fact, did make such a change in regard to another policy. Also there was uncontradicted evidence that a friendly relationship continued between the decedent and Evelyn Blight following the divorce. For the foregoing reasons, I reach the following:

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1335, at least two of the claimants being of diverse citizenship.

2. The court has in personam jurisdiction over Lincoln and all competing claimants.

3. The postnuptial agreement of March 2, 1971, does not divest Evelyn Blight of her right to the proceeds of policy No. 64–787609 written by Lincoln on the life of John H. Blight.

4. The Clerk of Court is directed to pay to Evelyn Blight the sum remaining in the registry of the court after paying to the attorney for Lincoln the sum set forth in the Order dated August 14, 1975.