## Roth's Executor v. Roth

*Richard W. Cleckner,* for plaintiff.
*Herbert C. Goldstein,* for defendant.

HESS, *J.,* November 12, 1990—This is a case brought by plaintiff, Edward H. Roth, as executor of the estate of Larry D. Roth, deceased, against defendant, Nancy L. Roth, the ex-wife of Larry D. Roth. There is no disagreement concerning the facts and so we will summarize them as opposed to making separate factual findings.

The decedent and defendant were married on May 23, 1981; there were no children born of the marriage. In 1985, defendant filed for a divorce from the decedent, which divorce was granted on September 19, 1986. Prior to the entry of the divorce decree, defendant and decedent entered into a separation agreement which provided, inter alia:

"(23) *Retirement/Profit Sharing Plan/Pension Plans*

"Each of the parties hereto generally and specifically mutually releases the other from any interest he or she may have in the other's retirement, pension and/or profit sharing plans of any nature and kind whatsoever."

At the time of his death, Larry D. Roth was employed at the Ship Parts Control Center in Mechanicsburg, Cumberland County, Pennsylvania. Coincidentally, defendant worked for the same employer and had the same pension plan as her ex-husband, Larry D. Roth. On June 22, 1981, years prior to their divorce, Larry D. Roth had designated his wife, Nancy L. Roth, as beneficiary of any lump-sum benefit which may become payable under the Civil Service Retirement Act after his death. Following the divorce in 1986, Mr. Roth did not change his beneficiary designation with his employer. Larry Roth died testate on March 8, 1990, and his last will and testament, dated March 1, 1990, has been filed for probate in the Office of the Register of Wills for Cumberland County. In his will, he left his entire estate to his mother, Jean M.

Roth, and appointed his father, Edward H. Roth, executor. The executor has learned that his son had not changed his beneficiary designations for payment of his final compensation and pension plan. The final compensation due at the time of decedent's death was $1,487.45. His pension benefits were $23,303.03. When plaintiff learned of this situation, his attorney contacted defendant and requested that she execute the documents necessary to waive any claim to the decedent's pension and compensation. Defendant has refused to relinquish the monies to the decedent's estate and, instead, has held them in escrow with her attorney, Herbert C. Goldstein, Esq., pending the outcome of this litigation.

Plaintiff has brought this action seeking specific performance of the marital settlement agreement, in essence, requesting us to direct defendant to turn over the decedent's pension benefits and final compensation. Plaintiff has also asked an award of reasonable attorney's fees pursuant to the following provision of the marital settlement agreement:

"(20) *Breach*

"If either party breaches any provision of this agreement, the other party shall have the right, at his or her election, to sue for damages for such breach, and the party breaching this agreement shall be responsible for payment of all legal fees and costs incurred by the other in enforcing his or her rights under this agreement, or seek such other remedies or relief as may be available to him or to her."

This case presents us with the narrow question of whether we should order distribution of pension benefits in accordance with the marital property settlement, in the face of a beneficiary designation to the contrary. There is a dearth of Pennsylvania appellate authority on this issue. Cases from the courts of common pleas, including our own, and at

least one case from the United States District Court for the Eastern District of Pennsylvania, have dealt with the analogous question of the postnuptial agreement on the distribution of life insurance proceeds. In that regard, there is a division of authority in other jurisdictions:

"In New Jersey, it is settled that a separation agreement which contains a mutual release of all claims against each spouse's estate does not divest the interest of either spouse as named beneficiary under policies of insurance. Under the New Jersey rule, divestment must be according to the terms of the policy: *Gerhard v. Travelers Insurance Company,* 107 N.J. Super. 414, 258 A.2d 724 (1969); *John Hancock Mutual Life Insurance Co. of Boston v. Heidrick,* 135 N.J. Eq. 325, 38 A.2d 442 (1944).

"Coming to the opposite conclusion are cases following the California rule. They hold that the beneficiary may relinquish his or her rights by means of a property settlement agreement without there being a change of beneficiary executed in accordance with the terms of the policy. *Shaw v. Board of Administration,* 109 Cal. App. 2d 770, 241 P.2d 635 (1952); *Sullivan v. Union Oil Co.,* 16 Cal.2d 229, 105 P.2d 922 (1940).

"Even the California rule, however, imposes the requirement that the general release must be incorporated as part of a separation agreement, and it must clearly appear from the separation agreement that, in addition to the segregation of the property of the spouses, it was intended to deprive either spouse of the right to take under an insurance contract of the other. *Prudential Insurance Co. of America v. Broadhurst,* 157 Cal. App. 2d 375, 321 P.2d 75 (1958); *Jenkins v. Jenkins,* 112 Cal. App. 402, 297 P. 56 (1931)." *Ninno v. Prudential Insurance Co. of America,* 50 D.&C. 2d 102, 105-06 (1970).

What authority there is would seem to suggest that Pennsylvania will follow the California rule. In fact, this issue was dealt with by our court, earlier, in *Equitable Life Assurance v. Stitzel,* 19 D.&C. 3d 55 (1981), *aff'd,* 299 Pa. Super. 199, 445 A.2d 523 (1982), wherein Judge Sheely noted:

"An explanation has been advanced for the difference between the New Jersey and California rules. Under New Jersey law it is well settled that a named beneficiary has a vested right to insurance proceeds subject to divestment according to the policy provisions. California law, on the other hand, holds that a policy beneficiary obtains no vested right but only a mere expectancy which can be renounced in a property settlement agreement: *Gerhard v. Travelers Insurance Co.,* 107 N.J. Super. 414, 258 A.2d 724 (1969). Pennsylvania, like California, has consistently held that a revocable beneficiary under an insurance policy has only a mere expectancy with no absolute or vested right or interest during the lifetime of the insured. *Miller Estate,* 402 Pa. 140, 166 A.2d 10 (1960). It would seem logical then for Pennsylvania to follow the California rule and permit revocation of a beneficiary in a property settlement. But even under the California rule it must clearly appear from the property settlement agreement that it was intended to deprive either spouse of his rights as beneficiary of the insurance policy: *Thorpe v. Randazzo,* 41 Cal.2d 770, 264 P.2d 38 (1953). We are unwilling to hold that the broad language of the property settlement in question clearly deprived the ex-husband of his interest in the insurance proceeds. Instead we would require a part to *explicitly waive* his interest in the life insurance proceeds in the property settlement agreement." *Id.* at 60-61.

That the appellate courts of Pennsylvania would adopt the California rule is also the opinion of the

United States District Court for the Eastern District. That court has held that, under Pennsylvania law, postnuptial agreements whereby a wife relinquished her claimed ownership of policies on the husband's life, without explicitly waiving rights to receive proceeds as designated primary beneficiary, would not divest her, after divorce, of her rights as beneficiary. This was in a case where, as here, the insured had the opportunity to make the change if he desired. *Lincoln National Life Insurance v. Blight,* 399 F.Supp. 513 (1975).

The decision of the federal court specifically took note of uncontradicted evidence that a friendly relationship continued between the decedent and his ex-wife following the divorce. Any testimony concerning the relationship of Mr. and Mrs. Roth, following the signing of the postnuptial agreement and prior to Mr. Roth's death, was disallowed at our hearing as we are of the opinion that such testimony is violative of the Dead Man's Act. 42 Pa.C.S. §5930 (1982). Instead, we choose to ignore the nature of the relationship between Mr. and Mrs. Roth, following their divorce, as we do not agree with the federal court that it has relevance. Any number of factors would have prevented the decedent from changing beneficiaries, not the least of which is a conclusion, on his part, that a change of beneficiaries was unnecessary in light of his postnuptial agreement with his ex-wife. Specifically, we do not agree that merely because some time has elapsed between the execution of the postnuptial agreement and the death of the decedent that an inference arises that the decedent had consciously decided not to change the beneficiary. Such conclusion credits mankind with more attention to his personal affairs than is deserved. Moreover, the inference involves a completely subjective analysis of each case. It could be argued that one had had the opportunity to change

the beneficiary over a period of two years, or two months, or two weeks, or, perhaps, even two days.

We conclude that a postnuptial agreement may have the effect of waiving one's right to proceeds (in this case, of a pension) even as a named beneficiary provided the postnuptial agreement contains a waiver of such interest which is *explicit.* In *Equitable Life Assurance v. Stitzel,* Judge Sheely dealt with a settlement agreement which provided, in part, that each party relinquished "any and all claims . . . actions, causes of action . . . of whatsoever kind or nature. . . ." The case of *Ninno v. Prudential Insurance Company, supra,* dealt with a postnuptial agreement whereby a wife relinquished her claim to the "ownership of insurance policies on her husband's life" but did not divest her of her rights as the named beneficiary. In *Lincoln National Life Insurance Company v. Blight,* the decedent and his ex-wife agreed to waive any interest the other had in certain life insurance policies. On the other hand, there was no language, in the *Blight* agreement, which waived the interest of the spouse as a named beneficiary. None of these cases held that the waiver was explicit enough to overcome the beneficiary designation.

The agreement in this case provides explicitly that each party releases the other from *any interest* he or she may have in the other's pension plan of any nature and kind whatsoever. Mr. Roth, of course, was deceased before his pension plan began to yield monthly retirement checks. Thus, upon his death, Mr. Roth's "interest" was his lump-sum retirement benefit. By waiving her "interest" in the pension plan, we are compelled to the conclusion that Mrs. Roth's waiver of the interest in the lump-sum benefit was explicit.

On the other hand, the postnuptial agreement makes no reference to any waiver of Mrs. Roth with

respect to her ex-husband's last paycheck. This final paycheck is certainly not included in Mr. Roth's "retirement, pension and/or profit sharing" plan. Inasmuch as there is not only no explicit waiver but no mention of the final paycheck in the postnuptial agreement, it is clear that defendant is entitled to it. Accordingly, we make the following

### DECREE NISI

And now, November 12, 1990, the petition of Edward H. Roth, executor of the estate of Larry D. Roth, deceased, for specific performance is granted in part, and defendant, Nancy L. Roth, is directed to forthwith transmit to plaintiff the proceeds of her ex-husband's Civil Service Retirement System lump-sum benefit. The request of plaintiff that the proceeds of the final paycheck of Larry D. Roth, deceased, be likewise paid to the estate, is denied.

Unless post-trial motions are filed hereto within 10 days, this decree nisi to become a final order of court.