## Cody *v.* Metropolitan Life Insurance Company (et al., Appellant).

Argued March 27, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*Philip R. McLaughlin,* with him *Campbell, Wick, Houck & Thomas,* and *N. N. Nelson,* for appellant.

*Lawrence M. Sebring,* for appellee.

OPINION BY MR. JUSTICE LINN, April 10, 1939:

This was an interpleader to determine the ownership of money paid into court by the insurance company on a certificate[1] of insurance issued pursuant to a policy of group insurance covering employees of Jones & Laughlin Steel Corporation. An employee, William H. Cody, received a certificate in which he named his wife beneficiary. The certificate was dated August 30, 1928. He died January 2, 1935. In March, 1932, he and his wife separated and thereafter lived apart; he retained a key to the house in which she continued to live and was visited by her in a hospital shortly before his death. On June 23, 1934, he called on F. W. Kelsey, Superintendent of Safety and Welfare, of Jones & Laughlin Steel Corporation and stated that he wished to change the beneficiary. Kelsey supplied him with a proper form which

---

[1] Originally for $1,000, but increased to $4,000.

Cody filled out, designating as the proposed beneficiary, "Elizabeth Steeson, friend," and leaving the document with Kelsey who produced it at the trial. The policy provided: "Section 9. CHANGE OF BENEFICIARY. —Any Employee insured hereunder may, from time to time, change the Beneficiary by filing written notice thereof with the Employer accompanied by the Certificate of such Employee. Such change shall take effect upon endorsement thereof by the Employer on such certificate, and unless the Certificate is so endorsed, the change shall not take effect. After such endorsement, the change will relate back and take effect as of the date the Employee signed said written notice of change, whether or not the Employee be living at the time of such endorsement or not, but without prejudice to the Company on account of any payment made by it before receipt of such written notice."

Cody never produced the certificate for endorsement[2] of the proposed change as required in the provision quoted. After his death, more than six months later, the insurance was claimed by his widow as the beneficiary

---

[2] Kelsey testified: "Q. I show you the Certificate of Insurance issued to William H. Cody; the term in Common parlance is the policy; and direct your attention to the blank on the back of it, 'Register of Change of Beneficiary Note.—Entries in this Register are to be made only by the Employer. No other entries will be recognized. Date Endorsed Beneficiary Endorsed by.' Now I show you that paper and ask you this simple question, whether at any time after the 23rd of June, 1934, when Cody executed this Employee's Change of Beneficiary Form, whether Cody or anyone else on his behalf ever brought this Certificate of Insurance to you for the purpose of engrossing the Change of Beneficiary on the Certificate at the place designated? A. No, it never was. Q. And he remained in your employ and worked there all the time up until his illness and death in January of 1935? A. That is right. Q. Now, didn't you tell him that there was considerable doubt about him being able to change that Beneficiary unless it was endorsed on his Certificate? A. I told him, if it was possible, that he should bring the Certificate in; but I told him I thought it could be done."

designated in the certificate, and also by Miss Steeson. After the money was paid into court, Miss Steeson became plaintiff in the interpleader and the widow, defendant. The jury would have been justified in finding from the evidence that the policy was kept by the widow in an unlocked box in her residence; that Cody had access to the house but made no effort to get the certificate for the purpose of having the change completed by the required endorsement and therefore abandoned the intention.

The learned trial judge instructed the jury to find whether Cody had done all that on the facts shown could reasonably have been done by him to complete the change by producing the certificate for endorsement and, if they found that he had, their verdict should be for the plaintiff. The verdict was for the widow.

The appellant contends that, as the paper signed by Cody and left with Mr. Kelsey indicated an intention at that time to change the beneficiary, she is entitled to judgment notwithstanding the verdict; if this view is rejected, she contends that a new trial should be granted for errors in rulings on evidence and in the charge. The insurance company discharged its obligation by paying the money into court.

The facts bring the case within the class governed by the rule requiring one claiming on a defectively or imperfectly executed appointment to show that the insured, in exercising the reserved power to make the change, had done everything in the circumstances reasonably possible to comply with the provision: *Herrod v. Kimbrough*, 83 Pa. Superior Ct. 238; *Sproat v. Travelers Ins. Co.*, 289 Pa. 351, 137 A. 621; *Shoemaker v. Sun Life Ins. Co.*, 101 Pa. Superior Ct. 278; see *Riley v. Wirth*, 313 Pa. 362, 169 A. 139; *Brauner v. Corgan*, 316 Pa. 196, 173 A. 397; *Skamoricus v. Konagiskie*, 318 Pa. 128, 177 A. 809.

The jury may readily have concluded that Cody should have gone to his wife's residence and procured the cer-

tificate[3] or have asked[4] her to deliver it to him or should have taken other reasonable steps to obtain it (cf. *Riley v. Wirth,* 313 Pa. 362, 169 A. 139; *Skamoricus v. Konagiskie,* 318 Pa. 128, 177 A. 809; *Brauner v. Corgan,* 316 Pa. 196, 173 A. 397), and, having done none of these things during a period of more than six months, he had changed his mind and concluded not to complete the change contemplated at the time he signed the paper left with Mr. Kelsey. On the oral evidence, the question was for the jury; the motion for judgment n. o. v. could therefore not have been granted.

Appellant complains of the exclusion of her offer to show "the general methods employed by the insurer and the employer in handling group insurance and in particular the system adopted for the handling of beneficiary changes, the records kept thereof, and the record so kept of the change of beneficiary in issue in this case."[5] The evidence shows what was done and there is no suggestion that it was inconsistent with what was generally done or what was required by the policy or that plaintiff was in any manner prejudiced by the exclusion. For

---

[3] Mrs. Cody was called for cross-examination on behalf of plaintiff and testified that the certificate was kept in a tin box with other papers: "Q. How long did you keep this certificate in that box in the drawer of the dresser? A. Until I gave it to Mr. Sebring. Q. That is when you brought the action against the Insurance Company? A. Yes. Q. That remained in the box, then, all the time from the time it was first handed to you until after Mr. Cody's death? A. Yes. Q. And this certificate of increase that was with the other certificate was kept in the same place? A. Yes. . . . Q. And this little tin box did he have his papers and deeds in there, and you had your papers in there? A. Yes. Q. And during the time that he remained there with you in your house did he have access to that box? A. Yes. Q. It never was kept locked? A. No." Not having contradicted this evidence plaintiff was bound by it: *Dunmore v. Padden,* 262 Pa. 436, 105 A. 559.

[4] Mrs. Cody testified neither Cody nor any one else ever demanded the certificate.

[5] Quoted from Appellant's fourth assignment.

the same reason the fifth assignment must be overruled. The sixth assignment complains that the court sustained an objection to a question asked of Mrs. Cody. Having testified that on or about June 23, 1934, "there were no communications" between her and her husband, she was asked whether "the only communication that indirectly existed between the two of you was between the respective attorneys." We think the question should have been allowed but we also think that the refusal to allow it could not have harmed plaintiff and for that reason dismiss the assignment.

Other assignments complain of confusion or ambiguity in the instructions to the jury to aid in determining whether the insured did what was reasonably necessary to make the proposed change effective. Criticism is made of part of the sentence quoted in the 7th assignment, in which the learned trial judge said, "There is no evidence here that the paper [the certificate of insurance] was kept any other place than in its usual place, and there is no evidence at all that during the six months he lived after June 23rd he made any effort to make his intention of change of beneficiary final and effective." Without what followed, this quotation does not give an adequate idea of the entire instruction. The complaint is directed to the statement that there was no evidence of any effort, etc. But, taking a larger view, and dealing, as we should, with the charge as a whole, we think that what the jury would understand from it was that, while Cody had a key to the house and knew where the unlocked box containing the policy had been kept, the evidence was that he had done nothing between June 23rd and January 2nd of the following year when he died; that his omission in this respect would support a finding that he had changed his mind about depriving his wife of the benefit of the insurance. We find no reversible error in the instructions.

Judgment affirmed.