## Equitable Life Assur. Soc. v. Stitzel

*J. Michael Eakin*, for Michael W. Stitzel.

*James D. Flower, Jr.*, for Louis F. and Elaine Dixon.

OPINION BY SHEELY, J., MARCH 24, 1981 :

The plaintiff, Equitable Life Assurance Society of the United States (Equitable), insured the life of Valerie L. Stitzel, deceased, under a Group Insurance Policy No. 11997 issued to employees of PPG Industries, Inc. On June 1, 1977, the deceased designated Michael W. Stitzel, her husband, as the revocable beneficiary of the life insurance policy. She made a similar designation for her employee savings plan and for the plan authorizing deductions from her pay for the purchase of U.S. Savings bonds.

In the fall of 1978, the deceased and her husband began experiencing marital difficulties. In October of 1978, the deceased changed the designated beneficiary for her payroll savings bonds from Michael W. Stitzel to her father, Louis F. Dixon. Sometime thereafter the deceased and her husband executed a property settlement agreement. The settlement agreement provided in part that each party would relinquish his or her inchoate intestate right in the estate of the other, and that each relinquished "any and all claims, . . . actions, causes of action . . . of whatsoever kind or nature, for or because of any manner or thing done, omitted, or suffered to be done by said other party prior to and including the date hereof . . ." On May 5, 1980, this court granted the deceased and her

husband, Michael W. Stitzel, a divorce. However, the designated beneficiary on the insurance policy remained unchanged, even after the divorce decree.

On May 16, 1980, Valerie L. Stitzel died of accidental causes and Equitable became liable on the insurance policy in the amount of $22,800. The defendant, Michael W. Stitzel, the deceased's ex-husband, filed a claim for the insurance proceeds as the named beneficiary on the policy. The defendant, Louis F. Dixon, administrator of the estate of Valerie L. Stitzel, deceased, also filed a claim for the insurance proceeds contending that the property settlement agreement between the deceased and her ex-husband revoked the beneficiary designation. Defendants, Louis F. Dixon and Elaine Dixon, are the surviving parents of the deceased, whose claim to the insurance proceeds is based upon the following language in the policy:

> Any part of the insurance payable for loss of life for which there is no designated beneficiary living at the death of the employee will be payable in a single sum to the first surviving class of the following classes of successive preference beneficiaries: The employee's (a) widow or widower; (b) surviving children; (c) surviving parents; (d) surviving brothers and sisters; (e) executors or administrators.

The deceased had no widower or surviving children, so the surviving parents constitute the first class entitled to receive if this court should find that no beneficiary is designated.

Equitable did not contest its liability to pay the insurance proceeds, but only questioned to whom the proceeds should be paid. It therefore instituted an action for interpleader against the named defendants, which was granted by the court. Equitable then paid the proceeds of the policy into court and was excused as a party to the action.

The parties remaining in the action have stipulated to the facts set forth above. In addition, they stipulated that the deceased's parents, "Louis F. Dixon and Elaine Dixon would testify that Valerie L. Stitzel informed them that in the event of her death she did not wish her husband, Michael W. Stitzel, to benefit financially and she had, for that purpose, changed the beneficiary designation for all of her insurance, bonds, and savings programs at PPG from the name of Michael W. Stitzel to the name of Louis F. Dixon." (Stipulated Facts 1-2) "Michael W. Stitzel would testify that he spoke to Valerie L.

Stitzel the night of her death, that there [sic] conversation was pleasant and that she did not mention changing the beneficiary designation on her PPG insurance plan, bond plans or savings plan." (Stipulated Fact 2)

The issues now before us are (1) whether the decedent's actions effectively revoked the beneficiary designation; (2) whether the property settlement agreement constitutes revocation of the beneficiary designation; and (3) whether the divorce constitutes revocation of the beneficiary designation.

In answering the first issue, we note that, generally the procedures prescribed by the insurance policy for a change of beneficiary must be strictly followed, except that exact compliance may be waived if the insured did everything in his power to make the change and everything reasonably possible under the circumstances to comply with the terms of the policy: *Prudential Insurance Co. of America v. Bannister*, 448 F. Supp. 807 (W.D. Pa. 1978) ; *Cody v. Metropolitan Life Insurance Co.*, 334 Pa. 137. The insured's intent to change the beneficiary on her life insurance policy is not sufficient, without more, to prove substantial compliance with the policy terms: *Gannon v. Gannon*, 88 Pa. Super. 239. The parties have stipulated that the parents of the decedent "would testify" that the decedent told them that she had changed the beneficiary of her insurance policy. This testimony, even if found to be credible, is insufficient to prove that the decedent actually thought she had changed the beneficiary. Nor does it prove that she did everything in her power to make the change or to reasonably comply with the policy requirements. The claimants have therefore failed to meet their burden of proving substantial compliance with the policy terms for revocation: *Barner v. Lyter*, 31 Pa. Super. 435.

Our research reveals no Pennsylvania case that deals with the effect of a separation agreement containing a mutual release of claims on the interest of a spouse who is a named beneficiary under an insurance policy. In the Pennsylvania case which is factually closest to ours, *Ninno v. Prudential Ins. Co. of America*, 50 D. & C. 2d 102, a husband executed a general release in favor of his wife at the time of their divorce. Two and one half years later, the wife died, without exercising her right to change the designated beneficiary on her life in-

surance policy from her ex-husband. The court in *Ninno* discussed the two different rules which apply when a release is made as part of a separation agreement, which it set forth as follows:

> In New Jersey, it is settled that a separation agreement which contains a mutual release of all claims against each spouse's estate does not divest the interest of either spouse as named beneficiary under policies of insurance. Under the New Jersey rule, divestment must be according to the terms of the policy . . . (Citations omitted.)
>
> Coming to the opposite conclusion are cases following the California rule. They hold that the beneficiary may relinquish his or her rights by means of a property settlement agreement without there being a change of beneficiary executed in accordance with the terms of the policy . . . (Citations omitted.)
>
> Even [under] the California rule, however, . . . it must clearly appear from the separation agreement that, in addition to the segregation of the property of the spouses, it was intended to deprive either spouse of the right to take under an insurance contract of the other . . . (Citations omitted.)

Id. at 105, 106. (Emphasis added.)

The *Ninno* court did not apply either rule set forth above, because it dealt with a general form release which was not ancillary to, or a part of, a separation agreement. However, the court went on to find that the general form release did not divest the ex-husband of his interest as the named beneficiary under the insurance policy, because the insured did not comply, or effectively comply, with the policy requirement for changing the beneficiary.

An explanation has been advanced for the difference between the New Jersey and California rules. Under New Jersey law it is well settled that a named beneficiary has a vested right to insurance proceeds, subject to divestment according to the policy provisions. California law, on the other hand, holds that a policy beneficiary obtains no vested right but only a mere expectancy which can be renounced in a property settlement agreement: *Gerhard v. Travelers Insurance Co.*, 107 N.J. Super. 414, 258 A.2d 724 (1969). Pennsylvania, like California, has consistently held that a revocable beneficiary under an insurance policy has only a mere expectancy with no absolute or vested right or interest during the lifetime of the insured: *Miller's Est.*, 402 Pa. 140. It would seem logical then for Pennsylvania to follow the California rule and permit

revocation of a beneficiary in a property settlement. But even under the California rule it must clearly appear from the property settlement agreement that it was intended to deprive either spouse of his rights as beneficiary of the insurance policy: *Thorp v. Randazzo*, 41 Cal.2d 770, 264 P.2d 38 (1953). We are unwilling to hold that the broad language of the property settlement in question clearly deprived the ex-husband of his interest in the insurance proceeds. Instead, we would require a party to explicitly waive his interest in the life insurance proceeds in the property settlement agreement.

The United States District Court relied on the *Ninno* rationale in *Lincoln National Life Insurance Co. v. Blight*, 399 F. Supp. 513 (E.D. Pa. 1975) to reach a similar conclusion. The court, applying what it perceived to be Pennsylvania law, held that a postnuptial agreement whereby a wife relinquished her claim to the ownership of insurance policies on her husband's life, did not divest her of her rights as the named beneficiary of the policies after her divorce. The court based its decision on the fact that the wife did not explicitly waive her rights to the proceeds as the named beneficiary of the policies. Furthermore, the insured in *Blight*, as in the case at bar, had the opportunity to change the designated beneficiary, but did not, and, as in our case, the two ex-spouses maintained friendly relations after the divorce.

We conclude that expectancies under an insurance policy may be waived by a property settlement agreement. Although at least one state disagrees, where it does not clearly appear from the agreement that the parties know of the expectancies and intend to disclaim any future rights or interest under such expectancies, we are unwilling to find a waiver.

Parents of the deceased contend that the Probate, Estates and Fiduciaries Code (Code) of June 30, 1972, as amended, April 18, 1978, 20 Pa. C.S.A. §101 et seq. at §6111.1 (Supp. 1980-1981), mandates a conclusion that the divorce automatically terminated Michael W. Stitzel's designation as beneficiary under the policy. We disagree. Section 6111.1 provides as follows:

> If the conveyor is divorced from the bonds of matrimony after making a conveyance, all provisions in the conveyance which were revocable by him at the time of his death and which were to take

effect at or after his death in favor of or relating to his spouse so divorced shall thereby become ineffective for all purposes.

Section 6101 of the Code defines conveyance as:

> An act by which it is intended to create an interest in real or personal property whether the act is intended to have inter vivos or testamentary operation. It shall include an act by which a power of appointment whenever given is exercised.

The Code also provides, at §6108(a):

> The designation of beneficiaries of life insurance, annuity or endowment contracts, or of any agreement entered into by an insurance company in connection therewith, . . . and the designation of beneficiaries under any . . . employee-benefit plan, *shall not be considered testamentary* and shall not be subject to any law governing the transfer of property by will. (Emphasis added.)

By the very terms of the Code at §6108(a), the designation of a revocable beneficiary is not to be considered a testamentary act. Furthermore, Pennsylvania law is clear that the designation of a revocable beneficiary creates no vested rights, but merely an expectancy in the beneficiary. Therefore, the naming of a revocable beneficiary is not an inter vivos transfer of an interest in real or personal property to the beneficiary. Thus, we do not believe that life insurance is encompassed in the definition of a revocable conveyance for the purposes of §6111.1.

To construe §6111.1 of the Code otherwise would lead to an awkward result. Divorced spouses who remain amicable and who wish to maintain their beneficiary designations would be forced to take affirmative steps to rename their ex-spouse as beneficiary, while those who wish to revoke the designation would need to take no action. Such a rule is contrary to human nature and should be avoided, even if it could be said that, as a general rule, divorced spouses have no desire to benefit their ex-spouses.