## Hewitt v. Prudential Insurance Co.

*Joseph T. Mattson*, for plaintiff.
*Robert W. Suter*, for defendants.

KELTON, *J.*, March 22, 1984 — The issue for decision in this case is whether a decedent effectuated a valid change of beneficiary under a life insurance policy from his estranged wife, Gertrude Hewitt (Gertrude) to plaintiff, Irene Hewitt (Irene).

Plaintiff Irene filed this action against the Prudential Insurance Company of America (Prudential) for failure to pay Irene the accumulated proceeds of life insurance on the life of Charles H. Hewitt, deceased. Defendant Prudential interpleaded decedent's wife Gertrude. Thereafter pursuant to order

of court Prudential relinquished all claim to the money and paid the proceeds of the policy plus accrued interest to the Prothonotary of this court.

At the conclusion of jury trial Irene's counsel conceded that there were no factual issues for the jury and counsel for Gertrude and Irene each moved for directed verdicts. We then entered a directed verdict that Gertrude was entitled to recover the entire proceeds. Irene filed timely post-trial motions for judgment n.o.v. and a new trial which was argued before the undersigned. These motions are hereby denied and dismissed.

The beneficiary change clause of decedent's Prudential Life Insurance Policy no. 17-981-301 reads as follows:

Change of Beneficiary

The beneficiary under this policy may be changed from time to time, upon proper written request, provided such request is submitted to the home office together with this policy for endorsement, but such change shall become operative only if this policy is endorsed by the company. After such endorsement has been made, the change shall take effect and any interest of any previous beneficiary shall cease as of the date of such written request, whether or not the insured is living at the time of such endorsement. Any change of beneficiary shall be subject to the rights of any assignee at the home office. (Emphasis added.)

Decedent Charles Hewitt was married to Gertrude in October 1946 and obtained Prudential Life Insurance Policy No. 179-81-301 in the amount of $10,000 on October 6, 1949 naming Gertrude as the beneficiary. Gertrude remained married to Charles for 33 years. They had three sons, Charles H. Hewitt, M. D., James P. Hewitt and William D. Hewitt. In 1978, decedent separated from Gertrude

and on April 18, 1979 obtained a purported divorce in the Dominican Republic. On April 19, 1979, decedent went through a marriage ceremony with Irene in Puerto Rico. Irene and decedent then lived together as husband and wife for approximately seven months until his death from cardiac arrest on November 29, 1979 in Warminster, Pa.

Subsequent to decedent's death, Gertrude filed a declaratory judgment action in this Court in Gertrude P. Hewitt v. Irene C. Hewitt and the Prudential Insurance Company of America, No. 80-2542, collateral attacking the Dominican divorce decree. On October 22, 1981, Judge Issac S. Garb held that the foreign divorce was null and void and declared Gertrude to be the surviving spouse and widow of Charles H. Hewitt for all purposes.

The record shows that on or about June 20, 1979 after the marriage ceremony with Irene, decedent went to Prudential to attempt to change the Class I beneficiary of the policy from Gertrude Hewitt to Irene Hewitt. Decedent, who did not have the policy with him, conversed with the beneficiary change clerk, Mary Ann Robinson. Ms. Robinson had decedent sign the company's change of beneficiary form changing the beneficiary from Gertrude to Irene and naming his three sons as Class II beneficiaries. That form stated that it "shall become operative for any policy specified herein only when and if it becomes effective in the manner provided for beneficiary changes under the policy. . . ."

Decedent also signed a form requesting issuance of a duplicate policy, a form used when the original is no longer in existence. At that time decedent advised the clerk that he believed the policy was in possession of his former wife Gertrude.

Ms. Robinson clearly explained to Hewitt that he could not effectuate a change of beneficiary in a

pre-1963 Prudential insurance policy without presenting the policy itself so that the new beneficiary could be endorsed on the policy. Further, she also told decedent that the duplicate policy form required the prior beneficiary's signature.

Ms. Robinson advised the decedent that she or someone else from the company could write to Gertrude or Gertrude's attorney to obtain the policy. Even though decedent was advised that Prudential could contact Gertrude's attorney to obtain the policy decedent did nothing further to aid them in this regard and did not return to advise the company to whom to write. Specifically, decedent failed to: (1) provide Gertrude's address or her attorney's name and address to Prudential; (2) make demand on Gertrude himself to return the policy to him or Prudential; (3) request Gertrude's signature on the duplicate form to obtain a replacement of a lost policy; or (4) start suit against Gertrude to compel her to turn over the policy. As a result of decedent's failure to follow through on any of these matters. Prudential made no further efforts to acquire decedent's policy or to change the beneficiary.

Thus the record clearly shows that the policy was not produced by Hewitt on June 20, 1979 or any later date and was never endorsed by the company according to the procedures contained in the change of beneficiary clause. We find that this case is indistinguishable from Shoemaker v. Sun Life Insurance Co. of America, 101 Pa. Super. 278 (1930) in which the facts are nearly identical. There the contest was between decedent's wife, the original named beneficiary who claimed the proceeds of a life insurance policy, and decedent's mother. The mother relied upon a written request by decedent to the company requesting that she be substituted as beneficiary. However, the court ruled that the hold-

er of a life insurance policy who desires to change the beneficiary can do so only in accordance with the terms of the policy and held for the original beneficiary, the wife. The court stated:

Where a method has been prescribed by an insurance company, by which the beneficiary under a policy may be changed without the consent of the beneficiary, such method must be followed exactly to bring about an actual and completed substitution of the beneficiary. Where the method prescribed provided that there should be notice to the insurance company and a return of the policy for endorsement, the mere giving of notice in the form of a letter is not sufficient. Shoemaker, at 281 citing Herrod v. Kimbrough, 83 Pa. Super. 238, 240 (1924).

The record reveals that Mr. Hewitt understood the significance of the change of beneficiary and duplicate policy forms as well as the requirement of producing the policy. An insured will be excused from exact compliance with one of the requirements in the change of beneficiary process if it can be shown that he substantially complied by doing everything under the circumstances reasonably possible to comply with the beneficiary change provisions. Coleman Appeal, 33 D.&C.2d 191 (1963) and Cody v. Metropolitan Life Insurance, 334 Pa. 137, 5 A.2d 887 (1939).

However, we do not accept Irene's argument that decedent Hewitt was in "substantial compliance" with the policy requirements. In the five-month span between speaking to Ms. Robinson and his death, no policy was ever produced. Mr. Hewitt, who had access to the family home in Virginia after his separation from Gertrude, never retrieved the policy at the residence. Even though he came back several times, he never took the policy.

Irene relies on Prudential Insurance Company of America v. Serfass, 201 F.Supp. 716, 718 (W. D. Pa. 1962). There the beneficiary contest was between decedent's divorced wife and decedent's wife at the time of his demise. There, however, the trial judge specifically found that decedent's acts were "positive, unequivocal and directed to every possible effort to change the beneficiary within the limitations of circumstances over which he had no control." In our case, as noted, there was much more that could have been done. We, therefore, decline to follow Serfass.

In another context, our Supreme Court has recently reexamined the principles governing interpretation of contracts of insurance. See Standard Venetian Blind Co. v. American Empire Insurance Co., _____ Pa. _____ , 469 A.2d 563, 566 (1983) (unambiguous policy exclusions held controlling in spite of insured's lack of understanding thereof). Under Standard Venetian and the cases reviewed therein, the task of interpreting an insurance contract is normally for the court and not a jury and where the language is clear the court must give effect to the language unless the particular clause is inconscionable or otherwise unenforceable.

Here, because of the equivocal nature of the evidence, we do not believe that the decedent's state of mind was made clear. When advised by the beneficiary change clerk that production of the policy and signature of the old beneficiary was required, decedent vacillated. He chose to tell the proposed new beneficiary and his children that the changes had been taken care of but failed to have the necessary unpleasant confrontations with his first wife and her attorney by letting them know that he wanted the policy. One might speculate that decedent wanted to avoid a controversy, but it is not neces-

sary to do so. In any event, his actions were equivocal. Thus we do believe that it was not unconscionable to hold that he failed substantially to comply with the beneficiary change clause. We hold that he did not do everything reasonably possible to bring about the change.

## ORDER

And now, this March 22, 1984, plaintiff's motions for judgment n.o.v. and new trial are hereby denied and dismissed and judgment is entered in accordance with the verdict as directed at trial.